## City of Chicago v. Selz, Schwab & Co.

1. CITIES AND VILLAGES—*Position of City as a Private Corporation.*
—In its capacity as a private corporation a city stands upon the same
footing as would any individual or body of persons, upon whom a like
special franchise has been conferred. It is therefore liable to actions
for damages in the same manner as such individual or private corpora-
tion would be under the like circumstances.

2. SAME—*Liability for Injury Caused by Water-works System.*—
When a water-works system is operated by a municipality in part for
profit, even if principally for public purposes, the municipality is liable
for damages caused by negligence in its management.

3. PLEADING—*When Declaration is Not Aided by Verdict.*—Where
the statement shows a defective cause of action the declaration is not
aided by verdict.

Trespass on the Case.—Damages by flooding. Appeal from the
Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge pre-
siding. Heard in the Branch Appellate Court at the October term,
1901. Affirmed. Opinion filed December 16, 1902.

Statement.—This is an action brought by appellee to
recover damages occasioned by flooding the basement of
its building on the northwest corner of Monroe and Market
streets, Chicago. The water destroyed or damaged goods
to the amount, as stipulated by the parties, of $27,100.

The flow of water came from a broken joint in a water
pipe connected with a fire hydrant. This hydrant stood in
front of the appellee's building on Market street, between
the driveway of the street and the sidewalk. It rose above
the sidewalk and was contained in a circular brick basin
having a diameter at the top of three feet, and of four and
a half or five feet at the bottom, with walls about six
inches thick. This basin afforded access to the hydrant and
to the pipe, connecting the hydrant with the large city
water main in the street. This connecting pipe was six
inches in diameter, and entered on a level two or three feet
above the bottom of the hydrant basin. The upright pipe
of the hydrant was connected with the lateral six-inch
pipe by means of an elbow, having a bell-shaped opening
or mouth, into which the spigot end of the lateral pipe

entered. The water flow which caused the damage complained of was occasioned by the bell end or socket of the elbow slipping or being forced away from the spigot end, so-called, which had been originally set therein.

During the evening of June 8, 1900, about nine o'clock, plaintiff's house manager was informed by the watchman that water was coming into the basement of the store from the bottom of the hydrant basin. He examined the situation, telephoned to the city hall, and then went there in person. Thereafter a man in the uniform of a city fireman appeared, stating he had been directed to ascertain and remedy the trouble. This he failed to do, and went away saying he would notify the fire department, and the district foreman, who would be able to cut off the water. No one came, and at half after eleven o'clock the plaintiff's manager again went to the city hall, and was told that a policeman had been sent for the district foreman. At a quarter to one o'clock in the morning no one had appeared and the manager finally went home. The district foreman testifies that he was notified at his home about two or three o'clock in the morning, that he came down town, and listening at the hydrant, came to the conclusion the leakage was not serious. He left, and sent a foreman there about half after seven in the morning. At about ten o'clock in the forenoon he returned and says he found the water nearly stopped, though nothing had been done to stop it.

Meanwhile appellee's manager had returned, and finding no one there to fix the leak, he again, at about 7:40 A. M., visited the city hall, called at the water office, at the water pipe extension department and city engineer's office, in the effort to get some one to stop the leak. Returning to the store he saw men at work on water pipe across the street, and succeeded in getting their foreman, one Madden of the water department, to undertake to stop the flow of water. This was about 9:00 A. M. While this foreman, Madden, and one of his men, were at work about the hydrant, and apparently before they had discovered the cause of the trouble, the water burst out in great volume and force, tear-

ing a hole three or four feet in diameter in the brick wall of
the hydrant basin, and rushed into appellee's adjacent base-
ment store room, filled with merchandise, until it reached
a height of about fifteen inches.

It seems that the foreman, Madden, and his helper, made
no attempt, in the first instance, to shut off the water sup-
ply from the hydrant, but began work by removing the
iron cover from the hydrant basin, and then commenced
to remove a quantity of manure placed therein. It was
while they were removing this that the water-burst oc-
curred, and there is evidence tending to show that in so
doing they moved the top of the hydrant back and forth
across the basin. After the outburst they shut off the
water from that section, but the damage was then done.
Afterward the spigot end of the lateral pipe was found to
be about two inches out of and away from the bell end or
socket, into which, before the break, it had extended some
four inches, indicating that some force had moved the
upright hydrant pipe about six inches. It took about
three-quarters of an hour to shut off the water section and
stop the rush of the water, and this was done about half
after ten A. M.

The hydrant in question was constructed, and the joint
which burst open was made, about twenty-seven years before
the accident. There is evidence tending to show that usu-
ally the spigot end of the pipe is made with a bead or ridge
around its extremity, which, when inserted in the bell end
and surrounded by molten lead, locks or wedges the joint
so that the ends will not come apart without breaking the
bell. It appears that this "bead" was wanting on the
spigot end of the lateral pipe.

Appellee was using the space or area under the sidewalk
in front and contiguous to the building in connection with
the basement, and as a part thereof.

An ordinance was introduced in evidence by appellant's
attorneys which provides that no one other than members
of the fire department of the city, and such persons as are
especially authorized by the commissioner of public works,

shall be allowed to open fire hydrants, or attempt to draw water therefrom, or in any manner interfere therewith under penalty. Street sprinkling contractors were, however, allowed to draw water from the hydrant in question, under a license, paying the city therefor at a fixed rate.

CHARLES M. WALKER, corporation counsel, and THOMAS J. SUTHERLAND, attorneys for appellant.

FELSENTHAL & FOREMAN, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This cause was by stipulation submitted to the court, a jury having been waived. The amount of damages, if it should be found the city was liable, was fixed by agreement at $27,100. It is said by the city's present attorneys that the city committed an error in making this stipulation relieving appellee from the burden of proving the amount of its damages, and we are asked not to be influenced by this solemn stipulation. Exactly what is meant by this request we are not further advised. No showing was made in the trial court, and none is made here against the binding force of the agreement. The question to be determined is whether or not the city is liable for the damages stated.

It is said by appellant's attorneys that while there is no positive evidence of the exact manner the joint connection which came apart was originally made, it yet appears that it had been there twenty-seven years without leaking, so far as was ever discovered, had been regularly inspected, and that no evidence of negligence in its construction appears, while there is testimony of witnesses for the city, in whose opinion the original construction was good. If this be conceded, we do not deem it particularly material. The original leak may have resulted from accidental causes, the nature of which may not be known. But it was not this original leak which caused the damage complained of. It was the outburst which occurred while the city's employes were manipulating the hydrant which did the damage.

There is undisputed evidence that when the employes of the city, after long and apparently unreasonable delay, attempted to get at the source of the leak, they failed to take what would seem to have been the very obvious precaution of turning off the water from the section of pipe where it was evident the trouble lay. Here was a six-inch lateral pipe connected with an eight-inch main containing a solid body of water under a pressure of thirty-five pounds to the square inch. It was evident that either in this pipe or the hydrant connected with it or in the joint between the two, the trouble must lie. The water was running from a leak somewhere in that hydrant basin and had been all night. Appellee had been trying for hours to get the city employes to attend to it. Yet no effort was made to turn off the water while investigation was made; and not only was this obvious precaution neglected but there is evidence tending to show also that the upright top of the hydrant was moved back and forth in a manner which it requires no expert to tell us might, with the leverage so exerted, break a solid inflexible joint between the six-inch lateral pipe and the upright hydrant. The outburst of water occurred while the city's employes were at work at the hydrant, but whether its immediate cause was the act of the workmen in moving the hydrant top or not we need not determine. It would naturally be difficult, perhaps, to dig out the manure filling the basin around it without pressing against and disturbing the hydrant somewhat, and this fact, it would seem, ought to have emphasized the necessity of taking the precaution of shutting off the water beforehand, when it was known, as it was, that there was a leak, suggesting a possible break in the pipes or joint. To take the risk of thus increasing the leak or breaking the joint without first turning off the water, was to invite just what occurred, and amply justified the finding of the trial court that the damage was the result of appellant's negligence.

It is urged by appellant's counsel that the hydrant was one of the appliances of the fire department of the city,

and that even if the damage was the result of the city's negligence it is nevertheless not liable. This contention can not be sustained. It is not suggested that the accident was occasioned by any use of the hydrant for purposes of fire protection, nor by the fire department. It was caused by negligence of the city's employes, acting for the city in the use of its powers as a private corporation. The water-works system was not constructed, nor is it used solely for fire protection, nor in the exercise merely of the city's governmental functions. It is a business which may be carried on under a proper franchise by a private corporation. The facts are undisputed that while this was a fire hydrant it was also used as a source of supply of water sold to street sprinkling contractors. Though impressed with a public use because conferred for the public advantage, yet the authority to supply citizens of the municipality with water is not exercised by appellant solely in pursuance of its powers of sovereignty. In its capacity as a private corporation " it stands upon the same footing as would any individual or body of persons, upon whom the like special franchises had been conferred." Wagner v. City of Rock Island, 146 Ill. 154–155. It is therefore liable to actions for damages in the same manner as such individual or private corporation would be under the like circumstances. Nevins v. City of Peoria, 41 Ill. 502. In the case of Aldrich v. Tripp, 11 R. I. 141–146, it is said : " We do not think it material that the public has the use of the waterworks for the extinguishment of fires. The injury complained of did not result from any use of them by the fire department. It is claimed to have resulted from the careless management of a hydrant by employes of the water commissioners." The city is liable for the negligent acts of such employes. The general rule is that when a business is conducted by a municipality in part for profit, even if principally for public purposes, the municipality is liable for damages caused by negligence in its management. Neff v. Town of Wellesley, 148 Mass. 487; Worden v. City of New Bedford, 131 Mass. 23.

We regard the declaration as stating a good cause of action. It is where the statement shows a defective cause of action that the declaration is not aided by verdict. C. & A. R. R. Co. v. Clausen, 173 Ill. 100–105; C. & E. I. R. R. Co. v. Hines, 132 Ill. 161. We have considered the various objections discussed at great length in the briefs, but discover no reversible error in the record. The judgment of the Superior Court must be affirmed.