---

(91 App. Div. 355.)

DUNSTON v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. February 12, 1904.)

1. MUNICIPAL CORPORATIONS—WATER PIPES—NEGLIGENT MAINTENANCE—LIABILITY.

A city is liable for damages caused by the escape of water from pipes negligently permitted to remain in a leaky condition after reasonable notice to the city of the condition, although it was caused primarily by the negligence of an independent contractor, for whose acts the city was not responsible.

2. SAME—GOVERNMENTAL FUNCTIONS—FIRE PROTECTION—NONLIABILITY.

A city is not relieved from liability for the maintenance, in a negligent condition, of a lateral water pipe, connecting a fire hydrant with the principal main, on the theory that in maintaining such pipe it is performing

a governmental function, viz., fire protection, where the principal main was used for all the purposes of city water supply, and the break in the pipe causing the damage extended from the lateral hydrant pipe into the principal main.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Eugene W. Dunston against the city of New York and others. From a judgment for plaintiff, and from an order denying a new trial, defendant city of New York appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Chase Mellen and Theodore Connoly, for appellant.

Franklin Pierce, Dill & Baldwin, and George L. Rives, for respondent.

LAUGHLIN, J. The recovery is for damages to plaintiff's candied fruits, which were in the cellar of premises occupied by him at No. 143 Chambers street, in the city of New York, caused by flooding from a break in a T or branch connecting a 12-foot main in the middle of Chambers street with a hydrant in front of neighboring premises. On the 14th day of November, 1901, the defendant Gerken applied for and obtained a permit, from the superintendent of street openings, paving, and repaving, to construct a vault in front of premises situate at the northwest corner of Chambers and Hudson streets, upon condition that he construct a recess or chamber for the existing hydrant or stopcock in front of said premises in Chambers street, pursuant to a plan filed; and the permit further recited:

"It is distinctly understood that this permit gives no authority, and it is strictly forbidden, to disturb, by excavation or otherwise, or in any way damage or interfere with the proper use of, any * * * hydrant or stopcock, or stopcock chamber or water pipe, or do anything to prevent the proper use of any hydrant or stopcock, or expose them to freezing."

A lot 20 feet in width separated Gerken's premises from those occupied by the plaintiff. The excavation was commenced for the work authorized by this permit on or about the 14th day of November, 1901, by the defendant Reilly under a contract with Gerken. The lateral pipe connecting the hydrant with the main was 4 inches in diameter and about 15 feet in length. In making the excavation, about 2½ feet of this pipe from the hydrant toward the main were uncovered and undermined. The hydrant and pipe thus uncovered, projecting into and suspended over the excavation, weighed from 275 to 300 pounds. The hydrant was supported by chains passing around timbers extending across the excavation above. There was a manhole and stopcock for turning off the water about 6 feet from the hydrant or 3½ feet beyond the outer edge of the excavation.

At about 11 o'clock in the evening of December 29, 1901, the pipe broke in the vicinity of the stopcock, the break extending out towards the main. There had been a leak in the pipe in that vicinity for many days. The soil was sandy, and the water percolating through the sand, and following the pipe, dripped into the excavation, softening the soil, and gradually undermining the sides of the excavation upon which

the timbers supporting the hydrant rested, and at or shortly before this complete break in the pipe these supports settled, leaving the entire weight of the hydrant to be sustained by the pipe itself. The water poured from the break in large volumes, with great force, making a roaring noise, flooding the excavation, and entering plaintiff's cellar, as already stated.

Counsel for the city contends that it is not liable for three reasons: (1) That the break in the pipe was caused by the negligence of the contractor in failing to properly support the hydrant, and that under the permit he became an independent contractor, to whom the work was delegated; (2) that there was no negligence shown on the part of the city or any of its employés; and (3) that the hydrant and lateral pipe connecting it with the main were constructed solely for the purpose of use in extinguishing fire, which is a governmental duty, and for negligence in the discharge of which the city is not liable in damages.

It clearly appears, we think, that the hydrant was not properly supported, and that it broke owing to the weight of the hydrant and that part of the pipe suspended over the excavation, and it is difficult to understand upon what theory the jury omitted to find negligence on the part of the contractor. That question, however, is not before us. As between the city and the contractor, it was undoubtedly his duty, under the permit, to properly protect the hydrant and supply pipe, but the rule of nonliability for the act of an independent contractor I think has no application to this case. The city, of course, would not be liable for any negligent act of the contractor or his employés; but that does not necessarily relieve it from liability for its failure to take precautions, within a reasonable time after notice, to prevent damage from the escape of water, even though such escape was caused by an act of the contractor. Moreover, were it not for the leak in the pipe which ultimately undermined the support to the hydrant, it may well be that the pipe would not have broken.

It does not follow from the fact that the contractor was negligent that the city may not be compelled to respond in damages. The plaintiff is entitled to recover against as many as he shows were joint tort feasors. The pipe that broke was a cast iron pipe, and it had been laid about 60 years. The stopcock and manhole had been constructed about 10 or 12 years, and new pipe was submitted for part of the old lateral pipe at that time, but not at the point where the break occurred. On the 23d day of December the defendant Reilly addressed a letter to the department of water supply, which was duly mailed, properly addressed, on that day, as follows:

"Gentlemen: The hydrant on the northwest corner of Chambers and Hudson streets is in a very leaky condition, and, as this bottom is composed mostly of loam and a mixture of sand, I do not think it safe to have this hydrant run, as, should it become worse, it may endanger the foundation of the building adjoining. Kindly have this attended to at once, and oblige,
"Yours truly,                                    James J. Reilly."

On the 27th day of December one Brady, who was a subcontractor under the defendant Reilly, properly addressed and mailed to the water department a letter signed by him, drawing attention to the fact that men were sent down to box the hydrant to prevent its freez-

ing, and saying: "But it was leaking so much that we do not know whether it would be advisable to pack in a lot of mineral wool or manure around it; afraid it might freeze. Please let me know what we can do to stop it and put it in the best condition." The plaintiff gave other evidence tending to show further communications with the water department concerning the leaky condition of this hydrant during two or three days preceding the flooding; and further showed that employés of the water department during this time discovered a leak in the joint of the hydrant itself, and discovered and repaired a leak in the vicinity of where the lateral pipe connected with the main, but that the water kept on dripping into the excavation; that the 29th day of December, when the break occurred, was on Sunday, at which time the pressure in the water pipes is very great; that the day before the water department, pursuant to a report made by some of its employés who had been there and discovered the condition of the hydrant, sent other employés to turn off the water, but that this had no appreciable effect upon the leak, which continued; that the chief engineer, foreman, and other employés of the water department had observed many days before this Sunday the manner in which the hydrant was supported and realized that it was not properly supported, but made no complaint to the contractor, and neither recommended that its condition be remedied or attempted to remedy it themselves, although the chief engineer admitted that if water was passing along the pipes and dripping into the excavation, as the evidence indicates, this was a condition attended with danger. If the hydrant had been supported in such manner that its support could not have been undermined by the leak, through which the water seems to have been constantly escaping in sufficient quantity to interfere with the work and to indicate the danger of an occurrence such as finally happened, for days, it may be that the pressure of the water, even on Sunday, would not have been sufficient to have broken this pipe, and there is no evidence that it would; but the evidence justifies the inference that the support was undermined by this escaping water, and the conditions were such that the employés of the water department should have known that this was liable to occur. The city is chargeable with knowledge that water which it thus artificially collects is a dangerous element if allowed to escape, and it is liable for damages caused by its failure to exercise proper care in maintaining the pipes in a safe condition, even though they are rendered unsafe by the wrongful or negligent acts of others. See Reed v. The State, 108 N. Y. 407, 15 N. E. 735. I think, therefore, that there was sufficient evidence to show concurring negligence on the part of the city with the negligence of the contractor, provided the city is not exempt from liability on the theory already stated.

The city in establishing and conducting a fire department, as in establishing and conducting a police department, is performing a governmental function. It is not liable in damages for the failure of the police department or members of the force to suppress crime, except under special statutory provisions, such as the law relating to damages caused by riots, or for unlawful arrests or assaults, even though committed with batons or revolvers furnished by it for the

use of patrolmen or officers of the force. Nor is it liable for the failure of the fire department to promptly respond to a fire, or for its negligence in extinguishing a fire, or for the failure of the city to supply the department with suitable and sufficient apparatus, or to furnish a proper supply of water, and maintain the same in a proper condition for use. These are all governmental functions, and in performing them the city represents the state. If the city maintained a separate water system for the fire department, and the break occurred in such a pipe, it may be that it could not be chargeable with negligence concerning the construction or maintenance of the same; but that is not this case, and need not be decided. Here the fire hydrants are connected by lateral pipes with the mains which are used for supplying the city and its inhabitants with water, and from which the city receives a revenue. It is clear, I think, that for negligence in not repairing a water main proper, or a service pipe which is used for other than fire purposes, the city would be liable for any damages directly and proximately attributable to such negligence. It will not do, I think, to relieve the city from liability for negligence in failing to keep this lateral pipe connecting the hydrant with the main in repair upon the theory that it was constructed and is used solely for fire purposes. The water flowing through the main was directly connected with this hydrant. The connection could be cut off but it was not. That is immaterial, for had it been cut off, as I understand the evidence, the premises would still have been flooded, for the break either occurred or extended beyond.

It follows that the judgment and order should be affirmed, with costs.

PATTERSON and HATCH, JJ., concur. VAN BRUNT, P. J., and INGRAHAM, J., dissent.