(July 6, 1906.)

JAMES EATON, by His Guardian ad Litem, Respondent, v. THE CITY OF WEISER, Appellant.

[86 Pac. 541.]

DAMAGES—PERSONAL INJURIES—MUNICIPAL OWNERSHIP OF ELECTRIC LIGHT SYSTEM—NEGLIGENCE IN CONDUCTING AND OPERATING THE SAME—CONTRIBUTORY NEGLIGENCE.

1. The doctrine announced in *Carson v. City of Genessee*, 9 Idaho, 244, holding cities and villages liable for negligence in the maintenance of their streets and thoroughfares in a reasonably safe condition for use by travelers in the usual modes, approved and followed.

2. Running and operating an electric light system by a municipality and the sale of electric light to private consumers is not one of its public and governmental powers and duties, but is rather a proprietary and private right and power, for the careless and negligent exercise of which the municipality will be held liable in damages the same as a private corporation or individual would be exercising like rights.

3. Municipal ownership, in the usual and common acceptation of that term, must of necessity carry with it the same duty, responsibility and liability on account of negligence that is imposed upon and attaches to private owners of similar enterprises.

4. Where a city is maintaining a wire across one of its public thoroughfares for the purpose of carrying and distributing a powerful and dangerous force like electricity, it must be held to the duty of exercising such diligence and care in maintaining and using the same as is commensurate with the dangers of the force which it is handling, in order that it may avoid and prevent injury to those rightfully engaged in their various pursuits and employments.

5. Evidence examined in this case and held that it does not establish such contributory negligence on the part of the plaintiff as to prevent and preclude him from recovering damages for the injuries sustained.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District for Washington County. Hon. Frank J. Smith, Judge.

Action by plaintiff through his guardian *ad litem,* against the defendant, the city of Weiser, for damages on account of personal injuries sustained by coming in contact with a live wire suspended across the street so low as to interfere with travelers along such thoroughfare. Judgment for plaintiff and defendant moved for a new trial. Defendant appealed from the judgment and from the order denying his motion. *Affirmed.*

Lot L. Feltham, for Appellant.

In the absence of a statutory provision imposing the liability, a municipal corporation is not liable for personal injuries to individuals occasioned through the neglect of officers of the corporation to properly perform their duties. (*Arkadelphia v. Windham,* 49 Ark. 139, 4 Am. St. Rep. 32, 4 S. W. 450; *Sievers v. San Francisco* (Cal.), 56 Am. St. Rep. 153, 47 Pac. 687; *Arnold v. City of Jose,* 81 Cal. 618,

22 Pac. 877; *Goddard v. Harpswell,* 84 Me. 499, 30 Am. St. Rep. 373, 24 Atl. 958; *Hennessey v. New Bedford,* 153 Mass. 260, 26 N. E. 999; *People v. Esopus,* 74 N. Y. 310; *Rowland v. Gallatin,* 75 Mo. 134, 42 Am. Rep. 395; *Edgerly v. Concord,* 62 N. H. 8, 13 Am. St. Rep. 533; *Young v. City Council of Charleston,* 20 S. C. 116, 47 Am. Rep. 827; *Navasotio v. Pierce,* 46 Tex. 525, 26 Am. Rep. 279; *Mc-Cutcheon v. Homer,* 43 Mich. 483, 38 Am. Rep. 212, 5 N. W. 668; *Hewison v. City of New Haven,* 37 Conn. 475, 9 Am. Rep. 342; *Pray v. Mayor of Jersey City,* 32 N. J. L. 394; *Bates v. Rutland,* 62 Vt. 178, 22 Am. St. Rep. 95, 20 Atl. 278, 9 L. R. A. 363.)

At common law there is no liability upon a municipality for injuries received by defective ways. (Shearman & Redfield on Negligence, sec. 346; Cooley on Torts, p. 622; 2 Dillon on Municipal Corporations, 3d ed., secs. 996-1000.)

It must affirmatively appear that the municipality has been guilty of negligence, and the general rule is that the occurrence of an accident does not raise the presumption of negligence. (*Mullen v. St. John,* 57 N. Y. 567, 15 Am. Rep. 530; *Bahr v. Lombard Ayers & Co.,* 53 N. J. L. 233, 21 Atl. 190, 23 Atl. 167; *Denver & R. G. R. Co. v. Fotheringham,* 17 Colo. App. 410, 68 Pac. 980.)

It is the duty of one who is exposed to a known danger, although he may not know the full extent of it, to use ordinary care to protect himself from any injury whatever, and he is guilty of contributory negligence if he is the author of any part of the injury resulting from his failure to exercise such care, or if, by the exercise of such care, he could have avoided the consequence of negligence ascribed to another. (*Read v. City etc. Ry. Co.,* 115 Ga. 366, 41 S. E. 629; citing *City of Columbus v. Ogletree,* 96 Ga. 177, 22 S. E. 709; *Snyder v. Wheeling Electrical Co.,* 43 W. Va. 661, 64 Am. St. Rep. 922, 28 S. E. 733, 39 L. R. A. 499; *Huber v. Lacrosse City R. Co.,* 92 Wis. 636, 53 Am. St. Rep. 940, 66 N. W. 708, 31 L. R. A. 583; *Wood v. Diamond Electric Co.,* 185 Pa. St. 529, 39 Atl. 111; *Coates v. Burlington & R. Co.,* 62 Iowa, 486, 17 N. W. 760; *Neal v. Marion,* 126 N. C. 412, 35 S. E. 812; *Neal v. Marion,*

129 N. C. 345, 40 S. E. 116; *Anderson v. Jersey City Elec. Co.*, 64 N. J. L. 664, 46 Atl. 593; *Thomas v. Western Union Tel. Co.*, 100 Mass. 156; *Criss v. Seattle Electric Co.*, 38 Wash. 320, 80 Pac. 525; *McGraw v. Friend & Terry Lumber Co.*, 120 Cal. 574, 52 Pac. 1004; *Dickey v. Maine Tel. Co.*, 43 Me. 492; *Town of Gosport v. Evans*, 112 Ind. 133, 13 N. E. 256; *Indianapolis v. Cook*, 99 Ind. 10; *Bruker v. Covington*, 69 Ind. 33, 35 Am. Rep. 202; *Chicago v. Richardson*, 75 Ill. App. 198; *Harris v. Town of Clinton*, 64 Mich. 447, 8 Am. St. Rep. 442, 31 N. W. 425; *Claus v. Northern S. L. Co.*, 89 Fed. 646, 32 C. C. A. 282; *Cook v. Wilmington City Elec. Co.*, 9 Houst. (Del.) 306, 32 Atl. 643.)

Rhea & Son, for Respondent.

The decided weight of authority holds that a city *is* liable in damages for the negligent acts of its agents and servants in the course of their employment. · (*Fox v. City of Philadelphia*, 208 Pa. St. 127, 57 Atl. 356, 65 L. R. A. 214; *Kleopfert v. City of Minneapolis*, 93 Minn. 118, 100 N. W. 669; *Buser v. City of Cedar Rapids*, 115 Iowa, 683, 87 N. W. 404; *The Major Reybold*, 111 Fed. 414; *City of Mobile v. Bienville Water Supply Co.*, 130 Ala. 379, 30 South. 445; *Wagner v. City of Portland*, 40 Or. 389, 67 Pac. 300, 60 Pac. 985; *Gorney v. City of New York*, 102 App. Div. 259, 92 N. Y. Supp. 451; *Butman v. City of Newton*, 179 Mass. 1, 88 Am. St. Rep. 349, 60 N. E. 401; *Twist v. City of Rochester*, 165 N. Y. 619, 59 N. E. 1131; *Ostrom v. City of San Antonio*, 94 Tex. 523, 62 S. W. 909; *Town of Colorado City v. Leafe*, 28 Colo. 468, 65 Pac. 630; *Chicago v. McGraw*, 75 Ill. 566-570; *Cooper v. Athens*, 53 Ga. 638; *Haag v. Board of Commrs.*, 60 Ind. 511, 28 Am. Rep. 654.)

The supreme court of this state has firmly settled the question of the liability of a city for obstructions in its streets, in the absence of a statute on the subject of liability, in the case of *Carson v. City of Genesee*, 9 Idaho, 244, 108 Am. St. Rep. 127, 74 Pac. 862. To the same effect are *Morton v. Village of St. Anthony*, 9 Idaho, 532, 75 Pac. 262; *Village of*

*Sandpoint v. Doyle,* 11 Idaho, 642, 83 Pac. 598, 4 L. R. A., N. S., 810.

The city of Weiser is liable in this case, not only because the accident happened in the streets of the city, but also because the electric light wire which was the cause of the damage complained of was owned by the city and under its management and control. A municipal corporation is liable upon the same principle as an individual citizen for acts of nonfeasance or negligence of its servants in the construction and management of its various improvements, in the absence of an express statute to the contrary. (*Wallace v. Muscatine,* 4 G. Greene (Iowa), 373, 61 Am. Dec. 131-133; *Cotes v. City of Davenport,* 9 Iowa, 235; *Bailey v. Mayor etc. of New York,* 3 Hill (N. Y.), 532; *Rochester White Lead Co. v. City of Rochester,* 3 N. Y. 463, 53 Am. Dec. 316; *Ross v. City of Madison,* 1 Ind. 281, 48 Am. Dec. 361; 2 Dillon on Corporations, sec. 954; Shearman & Redfield on Negligence, 4th ed., sec. 286; *Western Sav. Fund Soc. v. Philadelphia,* 31 Pa. St. 185, 72 Am. Dec. 730; Cooley on Constitutional Limitations, 249; *Esberg-Gunst Cigar Co. v. City of Portland,* 34 Or. 282, 75 Am. St. Rep. 651, 55 Pac. 961, 43 L. R. A. 435; *Twist v. City of Rochester,* 55 N. Y. Supp. 850, 35 App. Div. 508; Keasby on Electric Wires, 2d ed., 312; *Aschoff v. City of Evansville,* 34 Ind. App. 25, 72 N. E. 279; *Dunstan v. City of New York,* 91 App. Div. 355, 86 N. Y. Supp. 562.)

Defendant was using a dangerous force, and one not generally understood. It was required to use very great care to prevent injury to person or property. (*Giraudi v. Electric Imp. Co.,* 107 Cal. 120, 48 Am. St. Rep. 114, 40 Pac. 108, 28 L. R. A. 596; *Perham v. Portland Gen. Electric Co.,* 33 Or. 451, 72 Am. St. Rep. 730, 53 Pac. 14-24, 40 L. R. A. 799; *Denver Con. Electric Co. v. Simpson,* 21 Colo. 371, 41 Pac. 499, 31 L. R. A. 566; *Cook v. Wilmington City Electric Co.,* 9 Houst. (Del.) 306, 32 Atl. 643.)

The decided weight of authority holds that when a person becomes entangled in an electric wire hanging in a public highway at a height liable to cause injury, it raises a presumption of negligence against the owner or controller of that

wire.   (*Uggla v. West End Street R. Co.,* 160 Mass. 353, 39
Am. St. Rep. 481, 35 N. E. 1126; 2 Thompson on Negligence,
1220; Thompson on Electricity, sec. 178; *Stephens & C.
Trans. Cos. v. Western Union Tel. Co.,* Fed. Cas. No. 13,371,
8 Ben. 502; *Western Union Tel. Co. v. Eyser,* 2 Colo. 141;
*Blanchard v. Western Union Tel. Co.,* 60 N. Y. 510.)

AILSHIE, J.—The respondent obtained a judgment against
the city of Weiser for $1,050 and costs for personal injuries
received by him on account of the negligence of the city in
maintaining an electric light wire across one of the principal
thoroughfares of Weiser.   The city owns and is operating an
electric light system for the purpose of lighting its streets and
selling to the inhabitants of the municipality electric light.   It
appears that at about noon on the seventh day of March, 1904,
a tree was felled by some one across one of the principal streets
and struck the electric light wire which was stretched diagon-
ally across the street.   After the tree was removed the wire
remained sagged about nine feet above the center of the street.
It seems that this wire continued sagging until 5 or 6 o'clock
that evening, when it was less than eight feet from the ground.
One of the employees, who was a lineman and who had charge
of the repair of wires, was notified about 2 o'clock that after-
noon; and later in the afternoon the foreman and general
manager and superintendent of the system was also notified
of the condition of the wire.   Yet nothing appears to have
been done toward repairing or raising the wire; and, as even-
ing came on, a current of about two thousand three hundred
volts was turned on to the wire.   During the evening of that
day the travelers along that street, either on horseback or with
team, appear to have been obliged to turn to one side or the
other in order to avoid striking the wire, and one witness tes-
tifies that in passing along about 5:45 in the evening the wire
struck him and he received a considerable shock from it.   The
plaintiff was a schoolboy, some seventeen years old, and at
some time during the afternoon noticed that the wire was sag-
ging across the street.   That evening between 6 and 7 o'clock
he was sent to town on an errand.   He went on horseback,

and it was a dark, rainy night. He says he went down another street and remained down town about three-quarters of an hour and returned on the street over which this wire was stretched. He says: ''I started home up Main street, trotting a part of the way. I was in a hurry to get out of the rain and I was coming back to Mrs. Daly's entertainment at the opera-house. I had to take the horse back and I had to dress up. There were lights as I went home, one by the opera-house; there was one at the Monroe creek bridge, one at Mr. Hass' house and one at the Baptist Church, and there was one just below Mr. Sater's on Tenth street, about a block below Mr. Sater's. I did not notice any other lights in the streets at all. Something happened there by Mr. Sater's place. The last thing I remember was seeing Mr. Clayburgh sitting in his store talking to someone, and then I saw a flash, and that was the last I remember. The next I remember is the next morning some of the folks came in there and I woke up and asked them what was the matter with my hand. I do not remember of there being any obstruction in the street that night at all. I knew the wire was there but I didn't know it was down.'' No one saw the occurrence, but it is in evidence that the boy was badly injured from an electric shock, and it is also equally certain that he received it from this wire. The city contends, however, that he was guilty of such contributory negligence as to prevent a recovery, and predicates that contention principally upon the fact that the wire came in contact with his hand only. It is argued that if he had not been reaching for the wire that it would have necessarily struck his head or body, and that the very fact that it first came in contact with his hand is an evidence that he had extended his hand in the direction of the wire. We don't think this circumstance is sufficient to establish such contributory negligence as to prevent a recovery. There might be a great many explanations made as to why his hand was extended and struck the wire first; indeed, the wire might, as a matter of fact, have struck the body first, but not in such a way as to complete the electric circuit, and the plaintiff would have immediately at-

tempted to remove it with his hand. Such action would have been almost involuntary. On the other hand, he might have seen the wire an instant before coming in contact with it and have thrown up his hand to ward it off. In our view of the facts of this case, however, it is unnecessary to speculate as to how this occurred.

The first contention made by appellant is that the city is not liable for personal injuries to individuals occasioned through the negligence of officers of the corporation to properly perform their duties. We had occasion to give this contention very careful consideration in the case of *Carson v. City of Genesee,* 9 Idaho, 244, 108 Am. St. Rep. 127, 74 Pac. 862. In that case we held that: "Cities and villages incorporated under the general laws of Idaho, which grant to such municipal corporations exclusive control over their streets, avenues, lanes and alleys are liable in damages for a negligent discharge of the duty of keeping such streets and alleys in a reasonably safe condition for use by travelers in the usual modes." We are satisfied with the doctrine announced in that case, and do not think it necessary to again go into a consideration of the reasons for such a rule. It has been followed by this court in *Moreton v. Village of St. Anthony,* 9 Idaho, 532, 75 Pac. 262, *Village of Sand Point v. Doyle,* 11 Idaho, 642, 83 Pac. 598, 4 L. R. A., N. S., 810. In the case of *Moreton v. St. Anthony* we did say, however, "that a municipality is not guilty of negligence for every act or omission which would constitute negligence on the part of an individual. Much discretion is vested in such bodies." In the present case it is quite clearly established that the city did have ample and abundant notice of the condition of this wire. Notice to the employees of the city who had charge and control of its electric light system, and whose duty it was to keep it in order and to repair wires and the like, was notice to the city. A municipality can only act through officers and agents, and notice to an officer, agent or employee concerning the condition or status of a particular and specific business for and about which he is engaged is notice to the municipality itself. Aside,

however, from the duty which municipalities owe to the public to keep their streets and thoroughfares in a reasonably safe condition for use by travelers in the usual modes, there is another and even stronger reason why the city should be held liable in this case. The city was engaged in a private enterprise, namely, that of manufacturing and selling electric light to its inhabitants. Such an engagement or enterprise is not one of the public governmental duties of municipalities. Municipal ownership in the usual and common acceptation of that term must of necessity carry with it the same duty, responsibility and liabilities that are imposed upon and attach to private owners of similar enterprises. If the city owns and operates an electric light system and sells light to its inhabitants, there is no reason why it should not be held to the same responsibility for injuries received on account of its negligent conduct of the business as would a private individual be who might be running an opposition plant in the same municipality and selling light to the citizens thereof. There is abundant authority to be found in the books in support of this position. As early as 1858, the supreme court of Pennsylvania in *Western Savings Fund Soc. v. City of Philadelphia*, 31 Pa. St. 185, 72 Am. Dec. 730, said: "The supply of gaslight is no more a duty of sovereignty than the supply of water. Both these objects may be accomplished through the agency of individuals or private corporations, and in very many instances they are accomplished by those means. If this power is granted to a borough or a city, it is a special private franchise, made as well for the private emolument and advantage of the city as for the public good. The whole investment is the private property of the city, as much so as the lands and houses belonging to it. Blending the two powers in one grant does not destroy the clear and well-settled distinction, and the process of separation is not rendered impossible by the confusion. In separating them, regard must be had to the object of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political, or municipal character. But if the

grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation *quoad hoc* is to be regarded as a private company. It stands or the same footing as would any individual or body of persons upon whom the like special franchise had been conferred.''

Mr. Dillon, in volume 2 of his work on Municipal Corporations, at section 954, says: ''A municipal corporation owning waterworks or gasworks which supply private consumers on the payment of tolls is liable for the negligence of its agents and servants the same as like private proprietors would be.'' And again, at section 985 of the same work, in speaking of the liability of a municipality ''as a property owner,'' says: ''Upon similar grounds, municipal corporations are liable for the improper management and use of their property, to·the same extent and in the same manner as private corporations and natural persons.''

In volume 1 of Shearman and Redfield on Negligence, section 286, the authors say: ''In its proprietary or private character a municipal corporation may engage in enterprises for its own immediate profit or advantage as a corporation, although inuring ultimately, of course, to the benefit of the public. Of this character are waterworks, to supply water to consumers; or gasworks, to supply gas, on payment of rates or tolls, and other similar enterprises. In respect of its liability for negligence in the construction and maintenance of such works, the corporation is on the same footing with private proprietors, and is liable for the negligence of its agents in the management of its business.''

In *Ashoff v. City of Evansville*, 34 Ind. App. 25, 72 N. E. 279, the Indiana appellate court entered into a somewhat extended discussion as to the distinction between those acts of municipal corporations that fall within and are necessarily performed under authority of the sovereign, governmental or public power and duty devolving upon such corporations, and those acts and undertakings in which they engage in their private and business capacity. After pointing out many dis-

tinctions, the court arrives at the following conclusions: "Where the water system is conducted by the municipality in part for profit, even if principally for public purposes, the municipality is liable for damages caused by its negligent management. (*Chicago v. Selz etc. Co.,* 104 Ill. App. 376.) And where it supplies water to its citizens, and charges therefor, it acts in its private capacity, although such waterworks system is also used for the extinguishment of. fires. So acting, 'it stands on the same footing as would any individual or body of persons upon whom a like special franchise had been conferred.' "

One of the most carefully considered and tersely stated cases we have examined on this subject is that of *Esberg-Gunst Cigar Co. v. City of Portland,* 34 Or. 282, 75 Am. St. Rep. 651, 55 Pac. 961, 43 L. R. A. 435. After reviewing a number of authorities, the court said: "In accordance with this distinction it is quite universally held that when a municipal corporation voluntarily undertakes to construct and maintain water or gasworks in pursuance of statutory authority, for the purpose of supplying the inhabitants thereof with water or gas at rates established by the city, it is liable for an injury in consequence of its acts in constructing and maintaining such works, the same as a private corporation or individual." To the same effect as the foregoing authorities, see 2 Beach on Public Corporations, sec. 1140; Cooley on Constitutional Limitations, p. 249; 20 Am. & Eng. Ency. of Law, 2d ed., 1205; *Dunston v. City of New York,* 91 App. Div. 355, 86 N. Y. Supp. 562.

The city was using this wire across one of its public thoroughfares for the purpose of carrying and distributing a most powerful and dangerous force, and one but poorly understood by the masses. Aside from its duty to maintain its streets in a reasonably safe condition, it was under a much greater duty, as the owner and operator of a lighting system, to exercise diligence and care commensurate with the dangers of the force it was handling in order to avoid and prevent injury to those rightfully engaged in their various pursuits and employments. (*Perham v. Portland General Elec. Co.,*

33 Or. 451, 72 Am. St. Rep. 730, 53 Pac. 14, 40 L. R. A. 799;
*Giraudi v. Elec. Imp. Co.*, 107 Cal. 120, 48 Am. St. Rep. 114,
40 Pac. 108, 28 L. R. A. 596; *Denver Con. Elec. Co. v. Simp-
son*, 21 Colo. 371, 41 Pac. 499, 31 L. R. A. 566; *Cook v.
Wilmington City Elec. Co.*, 9 Houst. (Del.) 306, 32 Atl. 643;
*Macon v. Paducah St. R. Co.*, 110 Ky. 680, 62 S. W. 496;
*Economy Light Co. v. Stephen*, 187 Ill. 137, 58 N. E. 359;
15 Cyc. 471; *City of Denver v. Sherrett*, 88 Fed. 226, 31 C.
C. A. 499; Joyce on Electric Law, secs. 450, 451; Croswell
on Electricity, sec. 234.)

The plaintiff was a mere boy, attending the public schools,
and it would not be presumed that he was very familiar with
electricity; and, in fact, it is not shown that he had any par-
ticular knowledge of its dangers more than would be pos-
sessed by any other boy of that age. He was traveling along
the public highway where he had a right to be. He was not
a servant or employee of the defendant, and was chargeable
with no duty to it other than that arising from his citizenship
in the municipality. That he was seriously and permanently
injured is undoubted. Having notice, as the city had in this
case, it was negligence to allow a live wire charged with a
deadly current to remain suspended over a street in such
manner that it was likely to come in contact with persons on
horseback or in vehicles traveling along that thoroughfare.
The evidence abundantly supports the verdict and judgment.

We have examined the rulings complained of in the admis-
sion and rejection of evidence, and we do not think any error
was committed in the rulings of the court in those respects.

The appellant complains of the action of the court in giving
a number of instructions. Appellant urges that the instruc-
tions were in many instances conflicting and confusing, and
that in one instance they invaded the province of the jury
as to matters of fact, and that the instruction on contributory
negligence is erroneous and prejudicial to the appellant. It
is unnecessary to repeat these instructions at length here or
to deal with the objections made in detail. Our examination
of them has failed to disclose any material inconsistency or
any invasion of the province of the jury. The court does

not appear to have expressed any opinion upon the facts. It is true that the instructions are given on the theory that the plaintiff had suffered an injury, and our examination of the record discloses to us that there was no dispute, but that the plaintiff had received a serious injury; the only dispute on that point was as to the extent and gravity of the injuries received. That matter was properly submitted to the jury, and was evidently considered by them in fixing the amount of damages. Upon the objection that the court incorrectly stated the law of contributory negligence, we are satisfied no error was committed against the city. The instruction, if it varies at all from the true rule, is more favorable to the city than it was entitled to have given, and it has no cause for complaint against the instruction as it was given. A detailed consideration and discussion of the numerous rulings of the court and instructions given to which the appellant has taken exceptions would be of no particular value or importance here, and we therefore refrain from any further consideration of them in this opinion.

We find no error in the record that would justify the reversal of the judgment. The judgment is affirmed, with costs in favor of the respondent.

Stockslager, C. J., and Sullivan, J., concur.