COLE DRUG COMPANY OF MASSACHUSETTS *vs.* CITY OF
BOSTON.

Suffolk.   March 9, 1950. — July 3, 1950.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Municipal Corporations*, Liability for tort, Waterworks, Hydrant.

A city, which maintained a large water main in part to furnish water to
consumers commercially and also a hydrant supplied from the main
through a lateral pipe and, with the lateral pipe, used exclusively for
fire purposes, and whose employees were negligent in failing to shut off
the main supply of water within a reasonable time after a break oc-
curred at the junction of the lateral pipe with the hydrant, whereby an
excessive flooding of the surrounding area occurred, was liable in tort
to a nearby storekeeper for such damage to his goods through the
flooding as took place after the lapse of a reasonable time for shutting
off the water.

TORT.   Writ in the Municipal Court of the City of Boston
dated May 18, 1948.

The action was heard by *Tomasello*, J.

*E. F. Cooley*, Assistant Corporation Counsel, for the de-
fendant.

*F. R. Walsh*, (*J. H. Higgins, Jr.*, with him,) for the
plaintiff.

WILKINS, J.   The plaintiff drug company sues in tort for
damage to personal property negligently caused by water
escaping from the defendant's main as the result of a break
or separation at the junction of a lateral supply pipe and
the pot or base of a fire hydrant.   There was a finding in a
substantial amount for the plaintiff, the Appellate Division
dismissed a report, and the defendant appealed.

There was evidence tending to show these facts.   The
plaintiff conducted a drug store in the Dorchester district
of Boston.   The hydrant was fifteen inches in from the curb
in the sidewalk in front of adjacent premises.   Under the
sidewalk and parallel to and close to the building line ran
a main sixteen inches in diameter which furnished water to
consumers for domestic and commercial use and supplied all

fire hydrants in the general area. From this main a six inch lateral pipe about eight feet long and holding about twenty-five gallons of water ran at a right angle toward the street to the base of this hydrant. The sole function of the lateral pipe was to supply the hydrant. The pipe had no other outlet or connection with other pipes. In it about three feet from the hydrant there was a shut-off gate. The hydrant and the lateral pipe were used exclusively for fire purposes, and were installed and maintained from moneys raised by taxation. About 1 A.M. on May 7, 1948, the hydrant became separated at the base from the lateral pipe, and a "geyser" was thrown eight to ten feet in the air. There was no fire at the time. The plaintiff's basement was flooded, the depth of water being thirteen inches at 2 A.M. The main was not shut off until 4 A.M. Meanwhile the maximum height attained by the water in the basement was thirty-eight to forty inches. The city sent two emergency trucks with crews to the scene. The first with a crew of two men arrived at 1:30 A.M. One man stayed with the truck while the other probed for a shut-off for one half hour in the wrong place. About 2 to 2:15 A.M. the driver used the radio telephone. From 2:15 to 3 A.M. the two men stayed in the truck. At 3 A.M. the second truck arrived with another crew of two men. There was no consultation of charts to locate shut-off gates until 3 A.M. when a division foreman arrived with charts. The regulations of the department of public works of the city required such charts to be carried on emergency trucks. When one of the city employees was directed to a shut-off gate, he shrugged off this advice. In the vicinity of the hydrant there were four shut-off gates which controlled the water in the main. The operation of shutting off the water should have taken about thirty-five minutes with six men, and fifty minutes with four men.

The judge found that, after the danger was created by the rush of water from the hydrant, the defendant was negligent in failing to remove the cause within a reasonable time, and that the area became flooded with an excessive

quantity of water. The amount of the judge's finding was only for the damage occurring after the water should have been shut off. The defendant submitted requests for rulings, of which some were granted and some denied. Although the defendant does not refer to these requests in its brief, the issue it argues is fully raised by the denial of a request for a ruling that the evidence did not warrant a finding for the plaintiff.

The defendant contends that the plaintiff's loss was caused by water from a hydrant used solely for the purposes of fire prevention, a strictly public function for negligence in the performance of which it is not liable. It relies upon such cases as *Hafford* v. *New Bedford,* 16 Gray, 297, 302, *Fisher* v. *Boston,* 104 Mass. 87, 93, *Hill* v. *Boston,* 122 Mass. 344, 345, *Tainter* v. *Worcester,* 123 Mass. 311, 316–317, *Bolster* v. *Lawrence,* 225 Mass. 387, *Orlando* v. *Brockton,* 295 Mass. 205, 207–208, and *Baumgardner* v. *Boston,* 304 Mass. 100. See *Tindley* v. *Salem,* 137 Mass. 171, 174; *Pettingell* v. *Chelsea,* 161 Mass. 368; *Gregoire* v. *Lowell,* 253 Mass. 119, 121; *Abihider* v. *Springfield,* 277 Mass. 125, 127. This general principle is undoubted, but lacks present application. The negligence of the city employees arose not out of fire protection but out of acts related to the water supply system. The maintenance of such a system in part for the use of inhabitants who pay for water supplied constitutes a commercial function, for negligence in the discharge of which a municipality is liable in the same way as would be a private company similarly engaged. *Pearl* v. *Revere,* 219 Mass. 604. *Sloper* v. *Quincy,* 301 Mass. 20, 24. *Sullivan* v. *Saugus,* 305 Mass. 127, 130. *Harvard Furniture Co. Inc.* v. *Cambridge,* 320 Mass. 227, 229. The defendant is not exonerated by the presence of the hydrant and the lateral pipe, in the maintenance of which the judge ruled that there was no evidence to warrant a finding of negligence. The extensive injury to the plaintiff's property was caused by water from the sixteen inch main and not by the relatively few gallons in the lateral pipe. No damages were awarded for any loss before the lapse of a reasonable

time for shutting off the water. The ground of liability was negligent delay in shutting off the main supply of water. That some of the main supply might serve at other times to extinguish a fire does not prevent liability in the circumstances here disclosed. See *Neuert* v. *Boston*, 120 Mass. 338; *Lynch* v. *Springfield*, 174 Mass. 430; *Haley* v. *Boston*, 191 Mass. 291; *Kelly* v. *Winthrop*, 219 Mass. 471.

Decisions elsewhere, in so far as they have come to our attention, appear to be in accord with the view we have expressed. *Chicago* v. *Selz, Schwab & Co.* 104 Ill. App. 376, 380–381; affirmed 202 Ill. 545, 550–551. *Aschoff* v. *Evansville*, 34 Ind. App. 25, 34–35. *Miller Grocery Co.* v. *Des Moines*, 195 Iowa, 1310. *Lober* v. *Kansas City*, 74 S. W. (2d) 815, 821–823 (S. C. Mo.). *Dunstan* v. *New York*, 91 App. Div. (N. Y.) 355, 359–360. *Blake-McFall Co.* v. *Portland*, 68 Ore. 126. *Boyle* v. *Pittsburgh*, 145 Pa. Super. Ct. 325. *Aldrich* v. *Tripp*, 11 R. I. 141. *Piper* v. *Madison*, 140 Wis. 311. McQuillin, Municipal Corporations (2d ed.) §§ 2852, 2855. See *Judson* v. *Winsted*, 80 Conn. 384; *Perry* v. *Independence*, 146 Kans. 177; *Welsh* v. *Rutland*, 56 Vt. 228, 236–237; *Morgan* v. *Stowe*, 92 Vt. 338, 344–349.

*Order dismissing report affirmed.*