Bond Pharmacy, Inc. *vs.* City of Cambridge.

Middlesex.   October 8, 1958. — February 4, 1959.

Present: Wilkins, C.J., Ronan, Spalding, Counihan, & Cutter, JJ.

*Negligence,* Water pipe.   *Municipal Corporations,* Liability for tort,
   Waterworks.   *Evidence,* Telephone conversation, Of value.   *Agency,*
   Scope of authority or employment, Agent's knowledge.   *Notice.   Prac-*
   *tice, Civil,* Requests, rulings and instructions; Ordering verdict.   *Dam-*
   *ages,* For tort.   *Actionable Tort.*

At the trial of an action against a city for damage to stock in a building
   flooded by water from a leak in a water main in the adjacent street,
   evidence that the manager of the building dialed the telephone number
   of the city's water department, heard a voice answer "water depart-
   ment," and told the receiver of the call of a water leak in the street and
   asked that it be attended to was properly admitted in view of evidence
   that the water department had a switchboard which "never closes
   down" and a switchboard operator to answer telephone complaints,
   even though the receiver of the call did not expressly acknowledge
   receipt of the message; and findings were warranted that the receiver
   of the call had apparent authority to receive it and that notice to him
   of the leak was notice to the city.   [490–491]
At the trial of an action to recover for the flooding by water of stock of a
   drug store operated by the plaintiff corporation, there was no reversible
   error in the introduction in evidence of an inventory of the damaged
   stock prepared by an employee of the plaintiff from prices furnished
   by a wholesale druggist where the plaintiff's president and manager
   testified that the prices listed in the inventory represented fair market
   values and that the fair market value of the items therein was a certain
   amount before the flooding and nothing thereafter, and the trial judge
   charged the jury fully and accurately on the proper rule of damages
   and the jury could not have understood that damages were to be de-
   termined with reference to the wholesale prices.   [491–492]
Under Rule 71 of the Superior Court (1954) the question whether an
   action should be submitted to the jury must be raised by a motion for a
   directed verdict, not by requests for instructions.   [492]
Evidence that the water department of a city learned of a leak in the water
   main in a street about 5 p.m. but delayed at least four hours before
   shutting off the water, although that should have taken only "ap-
   proximately an hour" to do, warranted a finding that the city was
   negligent toward the owner of personal property damaged by water
   from the leak flowing into the cellar of an adjacent building.   [492]

In an action against a city for damage to stock of a drug store in a cellar flooded by water from a leak in a street main, evidence warranting findings that the defendant was negligent in failing to shut the water off by about 6 P.M., that at approximately 7:45 P.M. the water was just beginning "to rise slightly in the cellar," and that "from 9:15 on was the time when most of the material got saturated" furnished a sufficient basis for determining the extent of the damage due to such negligence on the part of the defendant and warranted a verdict for the plaintiff. [493]

TORT. Writ in the Superior Court dated May 13, 1953.

The action was tried before *Quirico*, J.

*Richard D. Gerould*, City Solicitor, for the defendant.

*Andrew T. Trodden*, for the plaintiff.

SPALDING, J. The plaintiff in this action of tort seeks to recover for the alleged negligence of the defendant in allowing water to enter the plaintiff's premises. There was a verdict for the plaintiff, which was recorded under leave reserved. Various exceptions were saved by the defendant but those here pertinent are exceptions to the denial of its motions for a directed verdict and to enter a verdict in its favor under leave reserved; to the failure to grant certain of its requests for rulings; and to the admission of certain evidence.

The evidence most favorable to the plaintiff is as follows: The plaintiff, a corporation, operated a drug store at 4 Inman Square, Cambridge. On December 23, 1952, at approximately 5:00 P.M. one Vincent, the property manager of the plaintiff's landlord, was informed that water was "coming up in front of the building at the entrance of the drug store." Vincent, assuming that a water main had burst, dialed the telephone number of the defendant's water department. A man's voice answered "water department." Vincent then said that there was a water leak in the street, near the sidewalk, and asked that it be attended to. (This evidence was admitted over the defendant's exception and will be discussed later.)

One Cohen, a pharmacist employed by the plaintiff, testified that he noticed at approximately 7:00 P.M. that water was coming up through the cellar floor of the pharmacy;

that he and other employees then began moving onto platforms the large supplies of stock that were piled on the cellar floor; that they continued to do this until about 9:30 P.M. at which time the water began to pour into the cellar and reached a depth to just below his hips; and that it took about two weeks to clean up the cellar.

One Merrin, an officer of the plaintiff, testified that he was informed of the leak shortly after 7:00 P.M. and that he notified the defendant (presumably by telephone) at about 7:15 P.M.; that the water began to rise rapidly at 8:30 or 9:00 P.M. at which time he called the defendant "twice in rapid succession"; and that at its highest point, between 9:30 and 10:00 P.M., the water was about hip deep and remained at that level until shortly after midnight, when an employee of the defendant broke open a sewer pipe so that the water could drain out.

The defendant introduced evidence that the water department first learned of the leak at about 8:00 P.M. and that when the superintendent arrived one hour later he learned that the emergency crew had already arrived, had closed seven or eight gates, and had determined the cause of the leak.

1. The testimony by Vincent relating to his telephone call to the water department at five o'clock was properly admitted. There was evidence that the telephone number of the water department had been dialed and that someone answered the call by saying "water department." There was also evidence that telephone complaints were answered by a switchboard operator and that the "switchboard never closes down." This was sufficient to warrant the inference that the call went to the water department and was answered by someone there. *Massachusetts Northeastern St. Ry.* v. *Plum Island Beach Co.* 255 Mass. 104, 114. *Irving Tanning Co.* v. *Shir,* 295 Mass. 380, 382–384. *Theisen* v. *Detroit Taxicab & Transfer Co.* 200 Mich. 136. *Connolly* v. *Davis,* 114 Neb. 556, 558–560. See *Van Riper* v. *United States,* 13 F. 2d 961, 968 (2d Cir.); *New York Life Ins. Co.* v. *Silverstein,* 53 F. 2d 986, 988 (8th Cir.); Wigmore on Evidence (3d ed.) § 2155. The situation here is to be dis-

tinguished from that of an incoming call. The fact that the
person initiating the call says he is A is not enough to make
the conversation admissible. There must be evidence (usu-
ally a recognition of A's voice by the receiver of the call) es-
tablishing A's identity. Hence such cases as *Lord Elec. Co.*
v. *Morrill,* 178 Mass. 304, and *Commonwealth* v. *Harris,* 232
Mass. 588, 591, cited by the defendant, are not controlling.
Considering the circumstances and the nature of Vincent's
call, it could have been found that the person answering it
had apparent authority to receive such calls, and that notice
to him of the leak was notice to the defendant. *Lord* v.
*Lowell Inst. for Sav.* 304 Mass. 212, 214. See *Denny* v.
*Riverbank Court Hotel Co.* 282 Mass. 176, 179; *Rintamaki* v.
*Cunard S.S. Co. Ltd.* 205 Mass. 115, 117–119. The fact that
Vincent's testimony does not reveal whether the person to
whom he spoke over the telephone expressly acknowledged
receipt of the message goes to the weight of the evidence
rather than its admissibility.

2. The defendant excepted to the introduction in evi-
dence of exhibit 1 which was an inventory of the stock
damaged by the flooding. This had been prepared by the
plaintiff's employee Cohen from prices furnished by a
wholesale druggist. The circumstances in which the exhibit
was admitted are these. Merrin, the plaintiff's president
and manager, testified that he had examined the inventory
and that the prices listed on it would be the "cost to him,"
that is, the wholesale price. After questions and answers
relating to Merrin's experience in the drug business he
testified that the prices listed, with few exceptions, repre-
sented the fair market value and that after the flood the
merchandise had no value. He then testified that the fair
market value of the items in exhibit 1, other than un-
identifiable items, was $3,584.40. At this point exhibit 1
was introduced. The sole ground on which this evidence is
challenged is that it was "merely a compilation of a whole-
sale drug concern's wholesale price figures," and had no tend-
ency to prove the fair market value of the merchandise. We
shall limit our discussion to this ground, and do not decide

whether the evidence might be objectionable on other grounds. We are not prepared to say that this evidence had no tendency to prove market value, but we need not decide that question. In view of Merrin's testimony that the prices listed on exhibit 1 represented the fair market value it cannot properly be said that the list was offered to show the wholesale prices. The judge charged the jury fully and accurately on the proper rule of damages to be applied and the jury could not have understood that damages were to be determined in reference to the wholesale prices. We are of opinion that the admission of exhibit 1 did not affect the substantial rights of the defendant. G. L. c. 231, § 132. *Pataskas* v. *Judeikis*, 327 Mass. 258, 261.

3. The defendant excepted to the refusal to give the following requests. "3. The evidence does not warrant a finding that the defendant negligently delayed in shutting off the water after it had been notified of a break in the water supply system in Inman Square. 4. The evidence as to the damage caused to the property of the plaintiff by any negligent act of the defendant is conjectural and cannot support a finding for the plaintiff." These requests have no standing, for they in substance asked for a directed verdict. It is settled that the question whether a case should be submitted to a jury must be raised by a motion for a directed verdict rather than by requests for instructions. Rule 71 of the Superior Court (1954). *Friedman* v. *Huck's Transfer, Inc.* 329 Mass. 362, 363. But the defendant also presented a motion for a directed verdict, to the denial of which it excepted, and since this presents the same questions we shall deal with them. If Vincent's testimony that he called the water department at five o'clock be believed, the jury were warranted in finding that the defendant was negligent in failing to shut the water off before 9:00 P.M. In view of the testimony of McGinness, the superintendent of the water department, that it took "approximately an hour" to close the circuit, a delay of four hours before closing it off could be found to be negligent. *Cole Drug Co. of Mass.* v. *Boston*, 326 Mass. 199, 200–201.

But even if there was negligence on the part of the defendant, the plaintiff could not recover if the damage caused by such negligence was purely conjectural. This is illustrated by the recent case of *A. DaPrato Co.* v. *Boston*, 334 Mass. 186. In that case there was evidence warranting a finding of negligent delay in shutting off the water, but because there was no evidence from which a jury could find the extent of damage caused by the delay the defendant was entitled to a directed verdict.

We are of opinion that the damage caused by the delay here was not a matter of conjecture. The evidence warranted a finding that at approximately 7:45 P.M. the water was just beginning "to rise slightly in the cellar," and that "from 9:15 on was the time when most of the material got saturated." On the basis of Vincent's testimony (a call to the water department at 5:00 P.M.) the jury could have found that the water should have been shut off at about 6:00 P.M. and that the damage occurring after this time was chargeable to the defendant. *Cole Drug Co. of Mass.* v. *Boston*, 326 Mass. 199, 201. The plaintiff was not obliged to establish its damages with the "exactness of mathematical demonstration." *Piper* v. *Childs*, 290 Mass. 560, 563. *Dalton* v. *Demos Bros. Gen. Contractors, Inc.* 334 Mass. 377, 378–379. We are of opinion that there was sufficient evidence to afford a reasonable basis for determining the proportion of damage caused by the defendant's negligence. It follows that the defendant's exception to the denial of its motion for a directed verdict must be overruled.

*Exceptions overruled.*