BANKERS LIFE INSURANCE COMPANY, APPELLANT, V. A.
M. ROBBINS, EXECUTOR, APPELLEE, ET AL.

FILED MAY 19, 1898.  No. 7628.

1. **Life Insurance:** ACTION ON POLICY. "A cause of action, or some
part thereof, on a life insurance policy arises, within the meaning
of section 55 of the Code of Civil Procedure, in the county where
the insured died." (*Bankers Life Ins. Co. v. Robbins*, 53 Neb. 44.)

2. ———: ———. "A life insurance company created under the
laws of this state is situated, within the meaning of section
55 of the Code of Civil Procedure, in any county in the state in
which it maintains an agent or servant engaged in transacting
the business for which it exists." (*Bankers Life Ins. Co. v. Rob-
bins*, 53 Neb. 44.)

3. **Principal and Agent:** EVIDENCE OF RELATION. ".Whether the re-
lation of principal and agent exists between two parties is gen-
erally a question of fact, and, while it is not necessary to prove
an express contract between the parties to establish such rela-
tion, either that must be done, or the conduct of the parties must
be such that the relation may be inferred therefrom." *Bankers
Life Ins. Co. v. Robbins*, 53 Neb. 44, approved and followed.

4. ———: ———: INSURANCE. It is stated in section 8, chapter 16,
Compiled Statutes, what acts or conduct will constitute the per-
former or actor an agent of an insurance company, and the lan-
guage of the section refers to and includes domestic or insurance
companies created under the laws of this state.

5. ———: ———: ———: SERVICE OF SUMMONS: STATUTE. The lan-
guage of said section, wherein it states, "shall be deemed to all
intents and purposes an agent or agents of such company," in-
cludes the purpose of a service of a summons in an action, on a
policy of a company, to recover the amount of a loss.

6. **Insurance:** BANK AS AGENT FOR COMPANY: SUMMONS. A bank, by
performance of one or more of the acts enumerated in said sec-
tion, may become an agent of an insurance company and proper
service of summons on it will bind the company.

7. ———. The decisions in *State v. Farmers & Mechanics Mutual Benevo-
lent Ass'n*, 18 Neb. 276, and *In re Babcock*, 21 Neb. 500, approved.

8. ———. The former opinion in this case, to the extent it held sec-
tion 8, chapter 16, Compiled Statutes, not applicable to insurance
companies created under the laws of this state, and reversed the
judgment of the district court herein, determined the judgment
of the district court of Valley county void, and awarded an in-
junction against its further enforcement by execution or other-
wise, overruled.

REHEARING of case reported in 53 Neb. 44. *Order of reversal vacated and judgment below affirmed.*

*John H. Ames* and *E. F. Pettis,* for appellant.

*A. M. Robbins* and *Reese & Gilkeson, contra.*

HARRISON, C. J.

John C. Morrow, who was then a citizen and resident of Valley county, was during the month of October, 1891, solicited by one C. R. Swan, agent for the Bankers Life Insurance Company, a corporation formed and in existence under the laws of this state, actively engaged in business in the state, with its home office and place in Lincoln, to apply to said company for insurance on his life. J. L. McDonough, of Ord, Valley county, accompanied Mr. Swan, introduced him to parties, and assisted in the solicitation of applications for insurance. Mr. McDonough did so in the Morrow matter, and signed as agent the application which was obtained and forwarded to the company. The amount applied for was $5,000, and at the close of the regular and usual preliminaries a policy was issued and delivered to the applicant. It bore date October 12, 1891, and the beneficiary named therein was Anna B. Morrow, the wife of the insured. John C. Morrow, the assured, died in Valley county, and as payment of the insurance was not made, suit on the policy was instituted for Anna B. Morrow in the district court of Valley county, in which summons was issued of the date October 22, 1892, which was returned by the officer to whom it had been delivered with the following statement relative to its service indorsed thereon: "I hereby certify that on the 22d day of October, 1892, I served the within writ of summons on the within named Bankers Life Insurance Company of Nebraska, a corporation formed under the laws of Nebraska, defendant, by delivering to J. L. McDonough, the Ord State Bank, and J. A. Patton, cashier of the Ord State Bank, the

agents of said corporation, true and certified copies of this writ, with all indorsements thereon, at the usual place of business of said defendant, as required by law, the chief officer of said corporation not being found in my county." There was no appearance for the company, and on or about November 26, 1892, its default was entered and judgment rendered against it. After the rendition of the judgment, Anna B. Morrow died testate and A. M. Robbins was appointed her executor. At his instance execution was issued for the enforcement of the judgment against the company, which was given the sheriff of Lancaster county for service. The company then caused this suit to be commenced in the district court of the last mentioned county, in which it was asserted that there had been no service of process on the company in the case in the district court of Valley county, said court had acted without jurisdiction, its judgment was void, and it was prayed that its further enforcement be restrained and further action on the execution be enjoined. The company was unsuccessful in the district court and perfected an appeal to this court. The cause was argued and submitted, and on December 9, 1897, an opinion was filed by which the decree of the district court was reversed and judgment rendered here for the company. (See *Bankers Life Ins. Co. v. Robbins,* 53 Neb. 44.) A motion for a rehearing was presented for the executor and was granted, and the court requested that in the further presentation of the case the question of whether section 8 of chapter 16 of the Compiled Statutes of 1897, in relation to insurance companies as corporations, is applicable to domestic insurance companies.

The cause has been again argued and submitted for decision. The first inquiry must be, was the action on the policy commenced in the proper county? Of this it was said in the former opinion: "A cause of action, or some part thereof, on a life insurance policy arises, within the meaning of section 55 of the Code of Civil Pro-

cedure, in the county where the insured died;" and in support of the doctrine announced there were cited *Union Central Life Ins. Co. v. Pyers,* 36 O. St. 544, and *Bruil v. Northwestern Mutual Ass'n,* 39 N. W. Rep. [Wis.] 529. It was also stated: "A life insurance company, created under the laws of this state, is situated, within the meaning of section 55 of the Code of Civil Procedure, in any county in the state in which it maintains an agent or servant engaged in transacting the business for which it exists." Both propositions are, we think, unquestionably correct, and we may add here on the same subject: "Section 55 of the Code, which authorizes the bringing of an action against an insurance company in any county where the cause of action or some part thereof arose, is remedial and not restrictive in its nature; that is, the action may be brought where the cause of action or some part thereof arose, although the company has no agent in that county" (*Insurance Co. of North America v. McLimans,* 28 Neb. 652),—from which it appears that the suit was brought in the proper county. Another query is, did the district court of Valley county, by the service of its process disclosed by the return of the officer, obtain jurisdiction of the company? It was stated in the prior decision: "Whether the relation of principal and agent exists between two parties is generally a question of fact, and while it is not necessary to prove an express contract between the parties to establish such relation, either that must be done, or the conduct of the parties must be such that the relation may be inferred therefrom." It was further asserted: "Section 8, chapter 16, Compiled Statutes, declares what conduct on the part of a person shall be conclusive evidence of the fact that he is an agent of a foreign insurance company. The section has no application to an agent of an insurance company created under the laws of this state." In what we have last quoted is contained an expression of the point of difficulty.

We will give some attention now to the chapter in

which section 8 appears. During the session of the legislative assembly of 1864 there was passed "An act in relation to insurance companies" (Session Laws 1864, p. 145), which comprised sixteen sections, the last one of which merely provided that the act should take effect and be in force from and after its passage. Section 10 was in the following terms: "This act shall not be so construed as in any manner to apply to life insurance companies, but shall include, without provisions, only the fire and fire and marine departments of any company that may have separate departments for life insurance, and fire and fire and marine insurance." It was also stated in the first section: "That it shall be the duty of each and every insurance company incorporated under the laws of this territory, for the purpose of insuring property against fire, and marine losses, to file with the auditor of the territory;" etc.,—from all of which it is undoubtedly apparent that the act had no reference to life insurance companies. In the revision of 1866 the act appeared with fourteen sections, the tenth being omitted and the words in allusion to fire and marine losses were not in the first section. This was chapter 25 of the Revised Statutes of 1866. It was thus left general in its references to insurance companies, except in that some one or more sections or parts thereof were of "foreign" companies as distinguished from domestic ones. It seems a reasonable conclusion that the legislature which passed the act, with the restrictive words as to the kinds of insurance companies to which it should apply eliminated, meant to give it general application and to include in its provisions life as well as other insurance companies. A subsequent legislature evidently so thought and gave expression to such thought as follows: "That portion of chapter twenty-five, of the Revision of 1866, which relates to insurance companies, and all acts and parts of acts amendatory and supplementary thereto, are hereby repealed, except so far as the same relates to the business of life insurance companies." (General

Statutes 1873, p. 445, ch. 33, sec. 41.) The chapter 25 of the revision of 1866 is now chapter 16 of the Compiled Statutes. That portions of the chapter were and are applicable to life insurance companies has been directly recognized by this court (see *State v. Farmers & Mechanics Mutual Benevolent Ass'n*, 18 Neb. 276; *In re Babcock*, 21 Neb. 500), and doubtless this was done with all facts of the history of the chapter in mind. This much on this branch of the subject, for the reason, among others, that it was of insistence in argument that possibly the chapter in question was not applicable to life insurance companies, as would appear from a review of some of the facts of its inception and history. We conclude it applies to life insurance companies.

An examination in detail of some of the sections of chapter 16 of the Compiled Statutes develops that the first four sections have reference to domestic companies; the first two state so specifically, and three and four unmistakably, though not in direct terms. Section 5 alludes in terms to foreign companies. It will also be noticed that nowhere in the first four—the other requirements are quite full—is it prescribed as a duty of home companies to procure a certificate of authority from the auditor before the transaction of business in the state, but in section 5 there is such a provision in relation to foreign companies. In section 6 it is demanded that all companies which fall within the terms of the section, which it must be said are first general, and then specific, relative to foreign companies, shall procure the certificate of authority from the auditor. This would seem, to some extent at least, to indicate that the omission to make the provision as to domestic companies has been, by the use of the general terms here, supplied or cured. The reason for the repetition of the requirements for foreign companies we need not inquire. There have been two decisions of this court, in one of which section 6 was stated in direct terms to be governable of life insurance companies and of domestic ones. (See *In re Babcock,*

*supra.*)  In the other (*State v. Farmers & Mechanics Mutual Benevolent Ass'n, supra*), while there was no direct statement on the subject, the company there involved in litigation was one of life insurance, and a domestic concern.

We have been strenuously urged, especially in the course of the oral argument herein, to overrule the decision in the case of *In re Babcock* as erroneous.  Of the reasons, among others, is that it was rendered in answer to a letter addressed to the court by the state auditor, and not in a litigated matter;  and it is asserted it was probably not as well presented or considered as might have been a cause before the court regularly and in the course of a suit in which there was a spirited and energetic contest of the issues and questions involved. The questions propounded by the auditor, which were answered in the opinion, were of matters pertaining to and materially affecting the business and affairs of the state, and it must be assumed, without question, that the court in its answer gave the result of its best thought and most careful examination and consideration;  and although the reasons for the conclusions announced are not stated in detail in the opinion, we are satisfied, after a careful examination of the section, and a deliberate weighing of the arguments *pro* and *con* on the subject, to approve and adopt the rule of that decision.  Moreover, in this connection we again call attention to the prior adjudication of the question in *State v. Farmers & Mechanics Mutual Benevolent Ass'n*, wherein there was a controversy that reached the court through the regular procedure, and in which we presume there was a thorough presentation of the questions;  and its determination is, in effect, the same as that in the case of *In re Babcock*, and to overrule the latter would include the overturn of the former.

If we turn again to the chapter itself we discover that in section 1 reference is made, if literally construed, but to incorporated insurance companies, and the same is true of section 2, also 3 and 4.  Section 5 treats of matters in

relation to foreign insurance companies. In each and all of these sections companies are mentioned. Section 6 seems to be in the nature of a *résumé* of all that has preceded, and to some extent a construction of it, in that it explains and amplifies the word "company" or companies, as used in prior sections, to include "company or association, partnership, firm, or individual, or any member or agent or agents thereof," and either foreign or domestic, and makes it unlawful for any of them to transact business unless there has been a compliance with all the provisions of the chapter and some additional requirements specified in the section.

Having reached this point in the discussion, we now turn our attention to section 8 of chapter 16, a careful perusal of which, and a construction which gives to it the plain, ordinary, and direct import of the words and language, convince us that it is incontestably, inseparably, and directly connected with and refers to what, and all that, had been said of companies in prior sections of the chapter. Its statements are, "or such insurance company or individual aforesaid," "such company," and "such company aforesaid"—not restrictive to any particular section or portion of the chapter, but to any and all of the companies aforementioned in the chapter. We must conclude that section 8 refers to life insurance companies, and domestic as well as foreign. Section 8 in entirety is as follows: "Any person or firm in this territory who shall receive or receipt for any money on account of or for any contract of insurance made by him or them, or for any such insurance company or individual aforesaid, or who shall receive or receipt for money from other persons to be transmitted to any such company or individual aforesaid, for a policy or policies of insurance or any renewal thereof, although such policy or policies of insurance may not be signed by him or them, as agent or agents of such company, or who shall in anywise, directly or indirectly, make or cause to be made any contract or contracts of insurance, for or on account of such

company aforesaid, shall be deemed to all intents and purposes an agent or agents of such company, and shall be subject and liable to all the provisions of this chapter."

It is of argument that the expression, "shall be deemed to all intents and purposes an agent or agents of such company, and shall be subject and liable to all the provisions of this chapter," means no more than to all intents and purposes of the chapter in which it appears; but this view we cannot accept as the true one. The fair, ordinary, and reasonable import of the language is that parties who perform the acts or a distinctive act of those enumerated in the section are agents to all general intents and purposes, as well as within and for the provisions of the chapter. A section of insurance law in which similar language—somewhat the same words—was employed in a like connection has been determined to include the purpose of service of a summons in an action against the insurance company to recover sums alleged to be due on a policy or policies of insurance. (See *State v. United States Mutual Accident Ass'n*, 31 N. W. Rep. [Wis.] 229; *Zell v. Herman Farmers Mutual Ins. Co.*, 75 Wis. 527; *Southwestern Mutual Benefit Ass'n v. Swenson*, 30 Pac. Rep. [Kan.] 405; *Shomer v. Hekla Fire Ins. Co.*, 50 Wis. 575; *Stehlick v. Mechanics Ins. Co.*, 58 N. W. Rep. [Wis.] 379; *Southern Ins. Co. v. Wolverton Hardware Co.*, 19 S. W. Rep. [Tex.] 615; *Reyer v. Odd Fellows Fraternal Accident Ins. Co.*, 32 N. E. Rep. [Mass.] 469; *State v. Northwestern Endowment & Legacy Ass'n*, 22 N. W. Rep. [Minn.] 135; *Fred Miller Brewing Co. v. Capital Ins. Co.*, 63 N. W. Rep. [Ia.] 568.) Some of the foregoing citations, while not directly in point as to service of process, were decisions based on the same general principle. It is true that in the cases cited the companies involved in the litigation were foreign companies, but in the Wisconsin cases the section to which reference is made, and which contains such words, was held to apply to all companies, both foreign and domestic. We have concluded that sec-

tion 8 refers to both domestic and foreign companies, and its words will not be given a different construction in a case in which a home company appears in the litigation than in one wherein are presented issues of the rights and liabilities of a foreign company; hence the cases cited, to the extent of the construction of the language, are in point. We must conclude that this insistence of the argument is untenable. In this connection we will call attention to the sections of our Code (sections 73 and 74), which provide for service of summons on corporations and insurance companies. They are as follows:

"73. A summons against a corporation may be served upon the president, mayor, chairman of the board of directors or trustees, or other chief officer; or, if its chief officer is not found in the county, upon its cashier, treasurer, secretary, clerk, or managing agent; or, if none of the aforesaid officers can be found, by a copy left at the office, or last usual place of business of such corporation.

"74. When the defendant is an incorporated insurance company, and the action is brought in a county, in which there is an agency thereof, the service may be upon the chief officer of such agency."

We will now turn our attention to the question of whether the service in the suit in Valley county was valid. We will here pass over the inquiry of whether J. L. McDonough by his acts became an agent for the company within the provisions of section 8. The company, after it had acquired business in Valley county, sent all regular calls or assessments on its policy holders, inclusive of Morrow, to the Ord State Bank for collection. A receipt was forwarded to the bank in each instance, and it was of its instructions that each receipt for a premium, when paid, must be by the bank countersigned, the receipts being in proper form for the transaction of business in the manner indicated in the instruction. Policy holders, Morrow and others, paid their premiums to the bank named and received receipts, and the money was

accounted for and remitted by the bank to the company. This was of and within both the spirit and the letter of section 8 of the acts and facts by which an agency for the company became of existence, and service of a summons on the bank, and in the manner made in the action in Valley county, was proper service and gave the court jurisdiction to adjudicate the rights of the parties, and its judgment was of force and valid. It follows that the former opinion, to the extent it announced that section 8 did not refer to domestic insurance companies, and that the service of the summons on the Ord State Bank in the suit in the district court of Valley county did not confer jurisdiction on such court to render a judgment therein, and that the judgment was void, and awarded an injunction against its enforcement, or the service of the execution, also the reversal of the judgment in this action, must be overruled and the judgment of the district court of Lancaster county herein must be affirmed. The conclusion reached renders a discussion of the other questions in the case unnecessary and they will be passed without further notice. Judgment will be entered in accordance with the opinion.

JUDGMENT BELOW AFFIRMED.

IRVINE, C., dissents.

RAGAN, C., adheres to views heretofore expressed.