Triller v. Sadle.

---

HENRY A. TRILLER, APPPELLANT, V. JAMES SADLE, APPELLEE.

FILED NOVEMBER 27, 1912.  No. 16,697.

1. **Principal and Agent: OSTENSIBLE AUTHORITY.** Ostensible authority to act as agent for the principal may be inferred if the party to be charged as principal affirmatively, or by lack of ordinary care, causes or allows third persons to trust and act upon such apparent agency. *Thomson v. Shelton.* 49 Neb. 644.

2. ———: GENERAL AGENTS. Where the name of the principal was signed to a lease by a firm of persons who signed the principal's name, by themselves, as agents, and subsequently attempted to collect the money due on the lease by superintending the giving of the bill of sale executed by the original lessee to the plaintiff, their principal, and obtained possession of the hay growing on the land leased by means of an action of replevin maintained in the name of their principal, they will be held to have been the general agents of the plaintiff, and the plaintiff will be bound by what they did.

3. **Replevin: EVIDENCE.** The evidence examined, and *held* to support the judgment of the district court.

APPEAL from the district court for Lincoln county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*William E. Shuman,* for appellant.

*Hoagland & Hoagland, contra.*

HAMER, J.

The plaintiff Triller seems to have been the owner of certain land in Lincoln county. He executed a lease of this land, or a part of it, to one C. W. Hutchinson. The plaintiff did not reside in the state, but seems to have been represented by Bratt & Goodman, a firm at North Platte, and the lease was signed "H. A. Triller, per Bratt & Goodman, Agts." Triller is the appellant and the plaintiff in the court below. The mortgage lease seems to have provided that the rental of the land, $115, was to be paid on or before December 1, 1908, with interest from date, and the lessee of the land agreed in the lease that there should be a lien upon the hay grown upon the land during that year. On the 4th of May, 1908, the date of the lease, it is not probable that the grass had grown much, but it was probably alive and growing a little, so that it was in existence. The lease was filed for record May 19, 1908. On October 14, 1908, no part of the lease money seems to have been paid, and James Sadle, the defendant and appellee, seems to have been hauling the hay away. To prevent Sadle from getting the hay, an action of replevin was brought by the plaintiff, Triller, against him in the county court. The plaintiff had the verdict and judgment, and the defendant appealed to the district court. The case was tried in the district court, where the defendant obtained a verdict and judgment. Before the commencement of the replevin suit, but about the time the same was commenced, and on October 14, 1908, Bratt & Goodman received from Hutchinson a bill of sale of all the hay upon the land, and which was executed to their principal, Triller. This seems to have been done the day the replevin case was commenced, and after this hay was cut. It is claimed on the part of the plaintiff that Bratt & Goodman were without authority to collect the money, and it is contended that they did not bind the plaintiff by what they did, except as to the making of the lease. Whatever the fact may be, they seemingly exercised the right to do whatever they

claimed was necessary to enable them to secure and collect the money for their principal, the plaintiff in the case.    At any rate, they were taking care of the plaintiff's business seemingly as best they could.

The affidavit for replevin alleged, among other things, "that he (the plaintiff) is the owner of the following described property, to wit: All the hay located upon * * * part of said hay being in stack, part baled and part loose, upon the above described land;  * * *  that said plaintiff is entitled to the immediate possession of said property."    The petition alleged, among other things:  "That the plaintiff had  * * *  a special interest in said hay, in that one C. W. Hutchinson, on May 4, 1908, executed and delivered to this plaintiff a chattel mortgage lease by the terms of which the said Hutchinson, who was at that time the owner of all of said hay, mortgaged the same to this plaintiff to secure the payment of the sum of $115, and interest at 8 per cent. per annum, from May 4, 1908."    It was also alleged that the same was a valid indebtedness from said Hutchinson to the plaintiff, and a copy of the chattel mortgage lease was attached to the petition as exhibit "A."    In the third paragraph of the petition it was alleged:  "That thereafter, on October 14, 1908, and prior to the commencement of this action, the said C. W. Hutchinson delivered to the plaintiff herein the possession of all of said hay, and also gave this plaintiff the right of possession thereof, and executed and delivered to this plaintiff a bill of sale of said hay conveying to the plaintiff all the interest and ownership of said hay not conveyed by the mortgage above described, a copy of which bill of sale is hereto attached and marked exhibit 'B.' "    In the fourth paragraph it was alleged that the plaintiff was, at the commencement of this action, and now is, entitled to the immediate possession of all of said hay.    And in the fifth paragraph it was alleged that the said hay was at the commencement of this action wrongfully detained by the defendant.    It will be seen that the plaintiff claimed both by reason of the chattel mortgage lease and also by reason

of the bill of sale. While the mortgage was not yet due when the case was commenced, it is claimed that the instrument entitled the plaintiff to possession, and that therefore he was entitled to maintain his action of replevin against the mortgagee and against any stranger, even though the mortgage was not yet due.

The bill of sale was dated October 14, 1908, in the consideration of the sum of $1 and other considerations paid by Henry A. Triller. It undertook to grant, sell, transfer and deliver to the said Triller, his executors, administrators and assigns, all the hay now located upon the particular land (describing it) in Lincoln county, Nebraska, "part of said hay being in stack, part baled, and part bunched on the ground." It also described the hay as "all of the hay grown upon said premises during the year 1908. wherever situated, whether located on wagons or racks." It also proposed to sell and assign all Hutchinson's interest in and to the proceeds of certain hay grown on the above described land and delivered to Harrington & Tobin, and authorized Triller, or his agents, to collect such proceeds. It also contained this clause: "It is my intention by this instrument to fully convey all my interests in the hay which I mortgaged to the said Triller on May 4, 1908, by a written chattel mortgage lease."

Upon the trial the defendant sought to prove that he was the owner of 20 tons of loose hay and 21 tons of stacked hay, and that the plaintiff took this hay in the writ of replevin. Of course, the main question to be determined is, who was entitled to the possession of the hay.

Upon the trial Mr. Goodman, of the firm of Bratt & Goodman, testified: "We were agents for the owner of the land, Henry A. Triller, *for leasing it.*" An effort was made to show that the agency of Bratt & Goodman for Triller was a restricted or special agency, and that they were not the general agents of the plaintiff. The defense was that after the chattel mortgage lease had been filed the lessee, Hutchinson, entered into a contract with one Shaw to cut, stack and bale the hay for one-half of it, and that

Shaw, learning about the mortgage to the plaintiff, Triller, went to North Platte to see Mr. Bratt, of the firm of Bratt & Goodman, agents of Triller, and that he had a talk with Mr. Bratt in which it is claimed that Mr. Bratt told him (Shaw) that he might go ahead and put up the hay in controversy, but that he should leave one-half of it upon the ground. While an examination of the bill of exceptions shows that Shaw did not testify, others undertook to relate what was said in the conversation between Bratt, of the firm of Bratt & Goodman, and Shaw. It is also claimed that the defendant, Sadle, had certain conversations with Mr. Bratt along the same line, and in which Mr. Bratt said that Shaw was to have half of the hay for cutting it. Sadle himself testified to a deal with Shaw with reference to cutting and stacking the hay, and that he afterwards saw Hutchinson, and that he and Hutchinson divided the hay. Sadle also testified that he talked with Goodman in North Platte, and that Goodman asked him if he was hauling the hay from Shaw's and, when he told Goodman that he was, then Goodman told him he did not want him to haul any more hay "until they (meaning Bratt & Goodman, for their client, Triller) had got their money." Sadle then testified: "I told him that we had divided the hay, and I was going to haul my half of it right along. He said, 'You can't do it,' and I said I was going to do it, anyhow." Sadle also testified to a conversation with Mr. John Bratt, of the firm of Bratt & Goodman. They talked about putting up the hay, and Bratt told him that the hay was mortgaged, and then he (Sadle) wanted to quit. He told Bratt that he was not going to do anything more, and then Bratt told him to go ahead, providing Hutchinson would give up his half of the other hay, the Triller hay, and then Hutchinson said that he was willing to give up the hay, and that Bratt at that time made no claim to both halves of the Triller hay. Sadle testified that at that time Bratt or Triller were not claiming any interest in the Triller hay, other than half, which Hutchinson was to have. Sadle testified that Bratt

was just claiming half of the hay on the ground, "the Triller half." Mr. Bratt testified as a witness, and denied the statements attributed to him by these witnesses. The defendant claimed that he secured the right to take one-half of the hay without regard to the mortgage upon the same, and that he was authorized to do so by what Bratt said to him. The plaintiff attempts to make the point that there was no evidence to the effect that Triller, the plaintiff, authorized Bratt to make these statements, and had no knowledge that Bratt made such statements, or that Bratt in any way ratified what was done. While Mr. Goodman, the other member of the firm of Bratt & Goodman, testified that Bratt & Goodman were the agents of the owner of the land simply for the purpose of "leasing" it, yet they seem to have sold the hay after possession was obtained under the writ of replevin. Over the plaintiff's objections, the defendant was permitted to introduce evidence to the effect that, after the chattel mortgage had been filed, Hutchinson had agreed with Shaw to divide the mortgaged hay if he (Shaw) would cut, stack and bale it; that Shaw delivered his interest in the contract to the defendant, Sadle, and that the hay was divided. There was testimony tending to show that the hay had been divided at the time the replevin suit was commenced, and that Sadle's share of hay under the division was taken away from him by the replevin proceedings.

There is a most strenuous contention that the plaintiff, Triller, never authorized Bratt to make any statement whatever to either Shaw or Sadle to the effect that any one might go ahead and cut, stack, and bale the hay, and that Bratt was getting outside of his authority if he said anything of that kind. It is claimed, on behalf of the plaintiff, that after Bratt & Goodman leased the land to Hutchinson their powers ended, and that, that being the fact, any talk that Bratt had with Shaw or Sadle about cutting the hay and dividing it was improperly received. It is also claimed that the instructions of the court improperly submitted to the jury the question of whether or not

Bratt & Goodman, on behalf of the plaintiff, Triller, had agreed with Shaw that he (Shaw) might have half of the hay in consideration of cutting and harvesting it.

Whether Bratt & Goodman were "special" agents or "general" agents, they were all the agents there were, and they seem to have authorized everything to be done that was done, and they hardly have the right to say that they had less authority than they exercised for the benefit of their principal. If the hay had not been cut, the plaintiff would have had no hay and no pay for the use of the land. While Bratt & Goodman made a contract for their principal to take a mortgage upon the hay for the purpose of securing the payment of the amount promised to be paid for the use of the land, it is apparent that they would have received nothing if somebody had not cut the hay, because there would have been nothing out of which to realize the rent money. If the hay was cut, the men who cut it ought to be paid. There was no hay before the grass was cut and cured. Bratt & Goodman had authority to make the original bargain for their principal. They seem to have had authority to take the subsequent bill of sale which was delivered to them to secure the money due for the rent of the land. At least they proceeded. When they got this bill of sale, there was immediately a replevin suit under which possession was taken, and they sold the hay which they got under the writ of replevin. If they had the authority to take the bill of sale, they apparently had the authority to secure the payment of the money and to collect it. It would seem to be better to hold that Bratt & Goodman had the right to bind their principal, the plaintiff, than to hold that the men who cut the hay, and therefore made it valuable to the plaintiff and enabled him to get his money out of it, are to do without the money necessary to pay them for their labor. Bratt & Goodman zealously looked after the interest of their principal, Triller. Triller has accepted the proceeds of the property and the work of Bratt & Goodman as his agents. During the summer, when it was apparent that Hutchinson was

not going to cut the hay upon which Triller had the lien of the chattel mortgage lease, and afterwards when Shaw was about to quit, and when Sadle was about to quit, then Bratt & Goodman were active in getting the hay cut and stacked so that they could get the rent of their principal out of it. Of course, if Shaw had not cut the grass, it would have been left standing and would not have been hay; it would have gone back into the ground again. But when Bratt & Goodman told Shaw to go ahead and cut the grass and leave half of it on the ground, and when Bratt told Sadle to go ahead, they were both exercising business thrift on behalf of their principal. While it is true that Mr. Bratt testified that he was not acquainted with Shaw, he did not fully deny his conversation with Sadle, but whatever this testimony may have been it was fairly submitted to the jury, and the jury found in favor of the men who cut and stacked the hay.

In view of what was done in the premises by Bratt & Goodman on behalf of their principal, we think that the instructions of the court to the jury were correct, and that when the jury found against the plaintiff they determined the agency of Bratt & Goodman to be a general agency to lease the land and collect the rent. The agency was shown. *Grilly v. Ruyle,* 87 Neb. 367; *Cooper & Cole Bros. v. Cooper,* 90 Neb. 209; *Creighton v. Finlayson,* 46 Neb. 457; *Thomson v. Shelton,* 49 Neb. 644; *Quinn v. Dresbach,* 75 Cal. 159, 16 Pac. 762; *Kasson v. Noltner,* 43 Wis. 646; *Brown v. Eno,* 48 Neb. 538; *Bankers Life Ins. Co. v. Robbins,* 55 Neb. 117; *Phœnix Ins. Co. v. Walter,* 51 Neb. 182; *Faulkner v. Simms,* 68 Neb. 295; *Oberne v. Burke,* 30 Neb. 581. The acts of Bratt & Goodman on behalf of their principal seem to have been ratified. Not one of them has been disavowed.

Notwithstanding the ingenious and plausible argument of counsel for the plaintiff, we are constrained to hold that the trial court committed no error in the instructions given and rulings made, and that the judgment was properly rendered for the defendant.

The judgment of the district court is

AFFIRMED.

LETTON, FAWCETT and SEDGWICK, JJ., concur in the conclusion only.