JOHN CONNOLLY, APPELLEE, V. JAMES C. DAVIS, APPELLANT.

FILED APRIL 22, 1926. No. 23775.

**Evidence:** TELEPHONIC CONVERSATION. Where a shipper of delayed freight calls the yardmaster at a division station of the carrier and gets from one who says he is the yardmaster an answer indicating that the delay was caused by negligence, the shipper, as a witness, may testify to the conversation, if otherwise competent, though he did not recognize the voice of the person talking. The syllabus in *Bernstein v. State*, 106 Neb. 337, considered as a general rule of law, overruled.

APPEAL from the district court for Scotts Bluff county: LEWIS H. BLACKLEDGE, JUDGE. *Affirmed.*

*E. E. Whitted, Mothersead & York, J. L. Rice* and *J. H. Barwise, Jr.,* for appellant.

*Morrow & Morrow, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

ROSE, J.

This is an action to recover damages for a day's delay in transporting by rail 78 steers in three freight cars from Bingham by way of Bridgeport, a railroad junction, to Minatare, and for failure to feed and otherwise properly care for the animals in transit. Plaintiff loaded and billed

the cars February 26, 1919. They arrived at Bridgeport February 27, 1919, were kept there until the next day and were not delivered at Minatare until February 28, 1919. It is charged in the petition that in the usual course of transportation the shipment should have arrived at Minatare February 27, 1919, and that plaintiff was damaged by the negligence of defendants to the extent of $1,774.08. This estimate included two items: Injury to steers, $780; loss of profits on a prearranged sale, $994.08. Defendants denied the negligence charged and pleaded further that the carrier was prevented by a snow storm from transporting the steers from Bridgeport to Minatare February 27, 1919, and that injury to the steers, if any, was unavoidably due to weather conditions. Upon a trial of the issues the district court disallowed the claim for profits on the anticipated sale and the jury returned a verdict in favor of plaintiff for $780. Defendant appealed.

The sufficiency of the evidence to sustain the verdict is challenged on the ground there was no competent proof that the animals were in good condition when loaded; or that the carrier was negligent in detaining the shipment at Bridgeport; or that there was a failure to feed, water and otherwise care for the stock in transit; or that the injuries to the animals, if any, were not due to the storm; or that there were substantial damages in an ascertainable amount based on the difference between the market value of the steers when delivered and the market value as they should have been, delivered a day earlier.

Disregarding for the moment the competency of testimony adduced by plaintiff, there is evidence from which the following facts and conclusions are fairly inferable: The cattle were in good condition when loaded. The shipment arrived at Bridgeport February 27, 1919, and in the regular course of transportation should have been attached to a local freight train and taken to Minatare later the same day. The shipment missed the local freight through the negligence of the carrier. The storm did not prevent the usual trip by the local freight February 27, 1919, and was not

the cause of the delay. The cattle were not unloaded or fed and watered at Bridgeport and suffered from the negligence of the carrier. Plaintiff had been buying and selling cattle for 30 years and as a dealer in livestock, and as the owner of the consignment, he was acquainted with values and knew what the steers were worth. They were not worth more than $100 a head when delivered, and would have been worth $116 a head if delivered a day earlier without the injuries resulting from delay and want of care. The verdict, therefore, seems to be sustained by the evidence, if the questions of competency are disregarded. It must be conceded, however, as contended by the carrier, that the estimate of $116 a head appears in the testimony as the anticipated sale price, an issue taken from the jury, but it may be inferred from other testimony by plaintiff that the estimates of $100 and $116 were the differences in values owing to delay and neglect.

The verdict, nevertheless, cannot be permitted to stand unless a telephonic communication from the yardmaster's office at Bridgeport to plaintiff at Minatare was properly admitted in evidence over the objection of defendants. Without this telephonic communication the evidence failed to show that the steers were not unloaded, fed and watered at Bridgeport—elements inhering in the verdict for damages. There is testimony by plaintiff tending to prove that on the morning of February 28, 1919, he called the yardmaster at Bridgeport by telephone, that there was a response to the call and that the speaker at the carrier's office said he was the yardmaster. What followed was told by plaintiff on the witness-stand as follows:

"I asked him why they didn't get my cattle out the day before, and he said, 'They missed them there,' and he said, 'We were going to send them out last night but we didn't have an engine available, but we will get them out today.' I said, 'Did you feed them today?' He said, 'No; we didn't. They are still in the cars.'"

The objection to this testimony is that there was nothing to identify the yardmaster as the person talking, his voice

not being recognized by plaintiff.   There was no positive identification, but the answer came in the usual course of telephonic service from the carrier's office where a yard-master was employed at a railway division point for freight. The answer by telephone indicated that the speaker was familiar with the shipment and with the duties of a yard-master.   The condition of the cattle when they arrived at Minatare indicated they had not been fed or watered. The telephonic communication had the same import.   The telephone is used by the carrier in the transaction of its business for the mutual benefit of itself and shippers.   In a yardmaster's office a telephone is an invitation to shippers to use it in proper transactions relating to the transportation of freight.   The telephonic instrument in the office of the yardmaster is under the control of the carrier.   Its use by shippers is not confined to those who can recognize the voice of the yardmaster in answering calls.   The means of detecting misuse of the telephone at a division station are not equally available to shipper and carrier, the latter having the advantage.   To discredit or deny transactions by telephone, unless the voice of the speaker is recognized, is to impair the usefulness of that instrument when applied to the business of a common carrier.   A rule of conduct which permits a common carrier to procure shipments by telephone and at the same time denies to a shipper the benefit of an answer when he inquires what has become of his property, if he does not recognize the voice of the person called, is open to question.   The courts differ on this point, but the better reasoning and the weight of modern authority seem to sanction the admissibility of testimony like that challenged in the present case as incompetent.

A careful annotator who made a critical analysis of precedents recently said:

"By the weight of authority evidence is admissible as to conversations over the telephone, where the witness has called for a designated person at his place of business and the one answering the telephone and carrying on the conversation claims to be the person called for.   This rule is based upon the apparent necessity, in view of the constant

use of telephones, of holding that where a telephone conversation is carried on in the ordinary and usual manner, and is had in the usual way, evidence of the conversation must be admissible, the weight attached thereto to be a matter for the consideration of the jury in view of all the surrounding circumstances, including the admissions or denials of the other party to the conversation." L. R. A. 1918 D, 720, and cases cited in note.

The syllabus in *Bernstein v. State,* 106 Neb. 337, without an examination of the opinion, is susceptible to misapplication as a general rule that a telephonic communication is inadmissible unless the voice of the person talking is recognized by the witness, and for that reason is overruled. The testimony there under consideration, however, was erroneously admitted and the judgment, therefore, was properly reversed.

With the principal question decided adversely to defendants, there is no error prejudicial to them in the record.

AFFIRMED.