ANNA WARE, APPELLEE, V. HOME MUTUAL INSURANCE AS-
SOCIATION OF IOWA, APPELLANT.
281 N. W. 617

FILED OCTOBER 7, 1938. No. 30392.

*L. R. Doyle,* for appellant.

*Perry, Van Pelt & Marti* and *A. J. Denney, contra.*

Heard before ROSE, C. J., EBERLY, DAY, PAINE and MESS-MORE, JJ., and KROGER, District Judge.

ROSE, C. J.

This case involves the liability of Home Mutual Insurance Association of Iowa, defendant, on a policy of indemnity insurance for bodily injury, resulting from an automobile accident, during the term of one year beginning May 12, 1934. The insurance was written on a Chevrolet coupé owned by Morris D. Meyer, who sold it August 11, 1934, while the policy was in force, and purchased a Chevrolet coach subsequently involved in an accident.

When George Heinrich was operating the coach owned by Meyer, September 2, 1934, it collided with another car and Anna Ware, plaintiff, was injured as a result of the accident. She sued both Meyer and Heinrich for damages and recovered an 800-dollar judgment against them for personal injuries March 28, 1935. Execution on the judgment was issued February 7, 1936, and returned by the sheriff *nulla bona.*

Seeking application of Meyer's insurance to the judgment in favor of plaintiff, and pleading facts essential to such relief, including the allegation that the insurance was transferred to the coach, though originally written to cover the coupé, she procured a summons in garnishment which was served upon the insurer and required it to disclose in court any credit of the judgment debtors or any property in its possession or under its control belonging to either of them. In answering the summons, garnishee alleged it owed them nothing and had in its possession nothing belonging to them; answers challenged by plaintiff as false.

The Home Mutual Insurance Association, defendant, garnishee, pleaded in defense of alleged liability for indemnity that the insurance coverage on the Chevrolet coupé which was sold prior to the accident September 2, 1934, was never extended to damages caused by Heinrich while he was driving the Chevrolet coach when plaintiff was injured, ex-

clusive authority to change insurance coverage to the coach having been committed to the president of insurer alone and not exercised prior to the accident. Indebtedness of insurer to Meyer or Heinrich in any form was denied. Facts constituting a defense to the garnishment were put in issue by a reply.

Upon a trial of the issues raised by the pleadings in the proceedings in garnishment, the jury rendered a verdict in favor of plaintiff for $1,029.66. From judgment therefor defendant appealed.

Insufficiency of the evidence to support a judgment in favor of plaintiff, failure to direct a verdict for defendant and errors in the instructions are the principal questions raised by the assignments of error.

The trial court submitted to the jury the controverted issues that, prior to the accident, the insurer waived its president's written indorsement on the policy changing the indemnity insurance from the coupé to the coach and that it made the change through its state agency in Lincoln— methods of transfer at variance with provisions of the policy. The sufficiency of the evidence to sustain the verdict in favor of plaintiff on those issues is the controlling question on appeal.

Many of the facts are admitted by the insurer or shown by it or proved by plaintiff without contradiction. The Home Mutual Insurance Association, insurer, defendant, writes in Nebraska in large volume indemnity accident policies of insurance on automobiles. For the purpose of its business in Nebraska it maintains a state agency in Lincoln with an office telephone listed in the Lincoln directory in the name of "Home Mutual Ins. Ass'n." In that agency Maynard V. Mills is state agent with power to appoint soliciting agents, solicit applications for insurance, collect premiums, and receive applications and data from policyholders for the transfer of insurance from one automobile to another. Such information was accepted from a policyholder or any one acting for him. Mills' office employee in the performance of the duties of his agency was Bernice

Fisher, who was required to answer the telephone, take care of the mail and the books and receive notice, applications and data for change of car indorsements on policies. George Rowe, adjuster for insurer, and his stenographer, Pauline Schriber, occupied an office in the Lincoln agency, the latter performing services for both Mills and George Rowe. Forms for change of car indorsements on policies were printed by the thousand including the facsimile signature of H. J. Rowe, as president of insurer. Applications by policyholders for these indorsements were received at the Lincoln agency at the rate of one to three a day. Attention to them was generally given the day they were received. Ordinarily the change was made as a matter of course. Insurer admitted the issuance of the policy May 14, 1934, for the term of one year; the accident with the Chevrolet coach September 2, 1934; the 800-dollar judgment. The policy was never canceled. No part of the premium was ever returned to the policyholder. The insurance risk and the premium on the coach were no greater than on the coupé. The facts narrated are clearly shown by the record.

There is, however, a violent conflict in the evidence on the issues that, prior to the accident, the state agency at Lincoln was notified that Meyer sold his coupé and bought the coach, that he applied there for a transfer of the insurance on the coupé to the coach, giving the necessary data, and that he was assured the change had been made. The president of insurer testified in effect that no one but himself had authority to extend the insurance on the coupé to the coach or to make such an indorsement on the policy; that, prior to the accident, no application for the change or necessary information therefor was received by insurer or by any one authorized to make such a change; that it was not made prior to the accident. There was testimony of a similar import by the state agent and by the two girls who assisted him in the state agency at Lincoln.

On the contrary, Morris H. Foist testified in substance that as sales agent he sold both the Chevrolet coupé and the Chevrolet coach to Meyer; that Meyer told him not to

deliver the coach without insurance on it and asked him to get the insurance on the coupé transferred to the coach; that Foist, by telephone which was listed in the current telephone directory in the name of insurer, called the state agency of insurer at Lincoln and talked to a woman in the office there; that she checked records to see if Meyer had insurance; that he gave her the motor number, the serial number and the price of the coach and asked her to make the transfer and that she said she took care of it; that Foist called the office of insurer in Lincoln in the forenoon on the date of the sale and delivered the coach in the afternoon of the same day, prior to the accident. The evidence is that insurer already had the premium for insurance. There was testimony that Meyer was told prior to the accident that he had insurance on the coach and that he believed he was thus protected. The jury believed the witnesses who testified on behalf of plaintiff.

The refusal of Meyer to take possession of his coach until after it had been insured was a precaution naturally prompted by the perils of a motorist on a public highway. Wreck-strewn arteries of travel, hospitals thronged with maimed and mutilated persons who had been occupants of automobiles and morgues filled with dead victims of negligent operators of motor vehicles warn purchasers of passenger cars to procure indemnity insurance promptly. The system of underwriting to which witnesses for defendant testified required from one to three days for communications between Lincoln and Des Moines to perfect a transfer in Nebraska of insurance from one car to another, while the premium remains in the hands of insurer without any increase in insurance risk or in premium.

H. J. Rowe, president of insurer, testified to an instance in which the change of car indorsement was dated at Des Moines January 25, 1937, and the effective date of the change was January 22, 1937, the latter date being the date of the request for the change and January 25, 1937, being the date on which the stenographer issued the formal indorsement of the change.

The witness who called the "Home Mutual Ins. Ass'n" by telephone had a right to assume he was invited to do so for the purpose of transacting proper insurance business relating to a policy in force and that the person answering the call under that name was speaking for that insurer, though the voice of the speaker was not recognized. *Connolly v. Davis*, 114 Neb. 556, 208 N. W. 626. When the witness applied for a transfer of insurance from one car to another he was not told there was no one there with authority to grant the application and that it would take from one to three days to transact the business with the home office at Des Moines. If the state agency at Lincoln had no actual authority to make the transfer, there is evidence it had apparent or ostensible authority to do so.

The suspension or forfeiture of Meyer's insurance from the time he sold the coupé and purchased the coach August 11, 1934, until September 5, 1934, after the accident, while the premium remained in the hands of insurer, is necessarily involved in the defense. The insurer was bound by the following statutory provisions:

"The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding." Comp. St. 1929, sec. 44-322.

These provisions are parts of the insurance contract which is not a device to procure and retain a premium and escape liability in the event of an honest loss. The failure to procure in writing the indorsement of the president on the policy did not contribute to the loss. Apparent or ostensible authority of an agent or an agency has been defined in many forms. Some of the definitions follow:

"Ostensible authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency." 2 C. J. 573—citing *Northwest Thresher Co. v. Eddyville State Bank*, 80 Neb. 377, 114 N. W. 291;

*Phoenix Ins. Co. v. Walter,* 51 Neb. 182, 70 N. W. 938; *Thomson v. Shelton,* 49 Neb. 644, 68 N. W. 1055.

"An apparent or ostensible agent is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him." 2 C. J. 427.

"Ostensible authority to act as agent may arise if the party to be charged as principal affirmatively or intentionally, or by lack of ordinary care, allows third persons to act on such apparent agency." 2 C. J. 461, sec. 70, note 8 (b)—citing *Triller v. Sadle,* 92 Neb. 579, 138 N. W. 728; *Cooper & Cole Bros. v. Cooper,* 90 Neb. 209, 133 N. W. 243; *Faulkner v. Simms,* 68 Neb. 295, 299, 89 N. W. 171, 94 N. W. 113.

A proper view of the entire record and of the law applicable to the evidential facts leads to the conclusion that the verdict is sustained by sufficient evidence and consequently that the insurance of Meyer was in effect at the time of the accident and that the insurer waived its president's written indorsement on the policy, transferring the insurance on the coupé to the coach. With the controlling issues thus determined, error prejudicial to insurer has not been found in the proceedings and judgment of the district court. Plaintiff is allowed a fee of $100, taxable as costs, for services of her attorneys in the supreme court.

AFFIRMED.