ELMER S. SLAFTER, APPELLEE, V. NEW BRUNSWICK FIRE
INSURANCE COMPANY, APPELLANT.

5 N. W. (2d) 217

FILED AUGUST 14, 1942.   No. 31386.

*Rosewater, Mecham, Shackelford & Stoehr*, for appellant.

*Floyd E. Wright* and *Jack E. Lyman, contra.*

Heard before ROSE, EBERLY, PAINE, CARTER, MESSMORE
and YEAGER, JJ.

PAINE, J.

This is a law action on a fire insurance policy of $3,000 on
plaintiff's farm residence, which was entirely destroyed by
fire April 18, 1940.   Jury returned a verdict for $2,995, with
interest from March 15, 1941, and the court, in entering
judgment on the verdict, added $300 as an attorney fee.   In-
surance company appeals.

To understand the issues in the case, we will set out a
summary of the pleadings.   The petition, filed February 4,
1941, states that on July 11, 1938, defendant, New Bruns-
wick Fire Insurance Company, executed and delivered to
plaintiff, Elmer S. Slafter, a three-year policy, insuring

against loss or damage by fire on a dwelling-house in the amount of $3,000, and on garage, granary and barn in the amount of $1,000; that due notice of fire, which resulted in total loss of the dwelling-house insured, was given on April 19, 1940; that proof of loss statements were furnished by plaintiff to defendant on June 18, 1940, including all information requested by the policy, although defendant company and its agents requested plaintiff not to furnish said proofs of loss; that demand has been made upon defendant to pay the amount due on said fire insurance policy, but defendant has refused and neglected to make payment.

Plaintiff further alleges that defendant was notified on or about February 5, 1940, that concurrent insurance had been written on said dwelling-house in the amount of $3,000, and request for defendant to forward written waiver for the concurrent insurance was made at the time of the notice that concurrent insurance had been written. Plaintiff prayed for judgment against defendant for $2,995, with interest from March 15, 1941, and for costs of suit and attorney's fee.

On March 8, 1941, defendant moved the court to order that George L. Vogler, of Scottsbluff, be made an additional party defendant, said Vogler having been agent for the defendant prior to April 18, 1940, when his agency was canceled for the reason that he failed and refused to carry out instructions given him by the company to cancel the policy as an undesirable risk. It is alleged that, if defendant is forced to pay any sum to Elmer S. Slafter, defendant will have a cause of action against George L. Vogler for his failure, refusal and neglect to cancel said policy and comply with the agency agreement. Defendant alleges that George L. Vogler is a necessary party defendant in this case, and that if he is made a party defendant a multiplicity of suits may be avoided.

On March 15, 1941, the court found that defendant, having failed to answer, demur or plead to plaintiff's petition, thereby admits the facts stated in the petition are true, and entered default judgment in favor of plaintiff in the sum of $2,995, together with costs and attorney's fee.

On March 21, 1941, defendant moved the court to set aside and vacate default judgment for the reasons: (1) That defendant had filed a proper pleading on or before answer day, and said pleading had not been ruled upon at the time default was entered, and that it was necessary that said pleading be disposed of and ruled upon by the court before defendant could be required to answer; (2) no notice of default or default judgment was served upon defendant or its attorneys; (3) because said default and judgment was improperly entered, without notice to the defendant or its attorneys, when there was a pleading on file on behalf of defendant, and which had not been ruled upon by the court; (4) that defendant has a meritorious defense to plaintiff's petition, and if said default judgment is not set aside and defendant be permitted to answer, said defendant will be deprived of its right to defend this case and will be materially prejudiced thereby.

On April 18, 1941, the court after argument sustained motion of defendant to set aside the default judgment and overruled motion to make George L. Vogler a party defendant.

On April 24, 1941, defendant filed answer, admitting the execution and delivery of the policy to plaintiff, and denying every other allegation in the petition not specifically admitted. Defendant alleges that, as one of the conditions for the issuance of its policy, there is a provision therein reading as follows: "In case there shall be any other insurance, consented to by this Company, whether valid or not, on the property covered by this Policy, the insured shall recover of this Company only such proportion of any loss as the sum hereby insured shall bear to the whole amount of insurance thereon. Any other or additional insurance on the property covered by this Policy, whether valid or not, is prohibited, unless written consent by this Company is indorsed hereon, and this Company shall not be liable for any loss occurring while there is any other insurance, whether valid or not, covering the property insured, or any part thereof, not consented to by this Company by indorsement on this Policy."

Defendant alleges that no written consent was ever obtained for additional insurance on said property insured by its policy, and that plaintiff has violated the provision of the insurance policy hereinbefore set forth, and defendant was deceived thereby, and that by reason of such violation defendant is not liable for loss to the plaintiff occurring on or about April 19, 1940; that, had there been any written consent by defendant indorsed on said policy, plaintiff would be limited in his recovery to such proportion of any loss as the sum insured against in said policy should bear to the whole amount of the insurance thereon, and defendant prays that plaintiff's petition be dismissed.

On August 20, 1941, plaintiff filed reply, admitting that on February 22, 1940, he had procured additional insurance upon the premises in the National Fire Insurance Company of Hartford, and that notice of said additional insurance was at said time given to defendant, with a request that defendant waive the provisions in its policy against other insurance; that defendant made no objection to said additional insurance, and failed to cancel its policy and return to plaintiff the unearned premium, but continued its policy in full force and effect, and that it is now estopped to deny liability under its policy by reason of such additional insurance.

Trial was had on October 23, 1941, and the jury returned a verdict in favor of plaintiff in the sum of $2,995, with interest from March 15, 1941, costs of suit and reasonable attorney fees, upon which verdict the court entered judgment.

The defendant sets out 13 errors relied upon for reversal, which included the overruling of the defendant's motion for a directed verdict, and that the verdict was contrary to the evidence and to the law, and sets out as error the giving of certain instructions and the refusal to give instructions Nos. 5 and 6 offered by the defendant.

The defendant insists that the procurement of the additional fire insurance in this case avoids its policy, and the mere failure of its agent to take up said policy and cancel same does not constitute an election to continue the policy in force.

As nearly all the facts are set out in some 21 exhibits, mostly letters of the defendant between its agent and various offices, there is very little dispute in the evidence in this case. The plaintiff bought this policy of fire insurance for three years from defendant on July 11, 1938, covering $3,000 on his residence and $1,000 on his garage, granary and barn, located just 5/8 of a mile straight north of the city of Scottsbluff. This policy was purchased of George L. Vogler, agent of the defendant; plaintiff ordered the insurance, gave Vogler a check for $74, and as he was leaving the next day he told him to hand the policy to his attorney. The policy contained a provision that it was "valid only when signed by George L. Vogler, agent at Scottsbluff, Nebraska."

In the winter of 1939-1940 plaintiff rebuilt the house, making it nearly twice as large, and expending, it was claimed, between $7,500 and $8,000 additional, changing the roof, putting on a sun porch, new floors, three fireplaces, French doors, with a full basement. Soon after its completion he asked George L. Vogler to write him some additional insurance on the house, and also on a lot of new furniture, and after it had run along for some time and he had not heard from Vogler, he purchased an additional policy of $3,000 fire insurance on the house from the Sams-McCaffree Insurance Agency.

While the plaintiff was in Omaha for four or five days, the residence was entirely destroyed by fire on the night of April 18, 1940. Bob McCaffree, the agent from whom he purchased the additional insurance, told plaintiff that if the defendant company objected to the additional insurance they would notify him. Plaintiff had read the provisions of the policy relative to additional insurance, but as no one had objected up to the date of the fire he did not think there was any question about that matter.

These are briefly the facts, so far as the plaintiff is concerned, and show that at the time of the fire he had never been notified by any one that there was any objection to the additional insurance. However, unknown to the plaintiff, a rather spirited correspondence had been taking place be-

tween the agent of the defendant company, George L. Vogler, of Scottsbluff, and the defendant company, his letters being directed to the Omaha representative of the defendant company, The Cavanaugh Company, general agents, at Omaha.

George L. Vogler testified that the plaintiff asked him for this additional insurance, and he at once wrote The Cavanaugh Company which was state agent for the defendant company, under date of January 24, 1940 (defendant's exhibit 5), and told them plaintiff desired $2,000 additional insurance, mentioned the new improvements, and asked the amount of additional premium he was to collect. Defendant's exhibit 16 is a letter from "Farm Department" of defendant company, being located at 309 West Jackson boulevard, Chicago, saying: "Dwelling, no doubt, is an exceptionally nice building * * * . We would feel much better about it if you would have one of your special agents inspect this risk before assuming additional liability."

On February 2, 1940, The Cavanaugh Company replied (defendant's exhibit 7) that the farm department of defendant company had asked to have an inspection made of the property, and that special agent Fred Mammen would make an inspection, and quoting the premium on the unexpired term for insurance on household goods. On February 10, 1940, The Cavanaugh Company wrote Vogler (defendant's exhibit 8) and inclosed indorsement, increasing the liability under the above policy in accordance with his request, said indorsement to be attached to the original policy, and copy to be kept in his office.

On February 22, 1940 (plaintiff's exhibit 3), Vogler wrote that he was returning the riders which they had sent covering additional insurance in connection with plaintiff's policy, for, on account of not having heard promptly, the plaintiff had placed the additional insurance with the Columbia Fire Insurance Company, through the Sams-McCaffree Insurance Agency at Scottsbluff, for $3,000 on the dwelling and $2,500 on the household effects.

On February 26, 1940, The Cavanaugh Company replied

(plaintiff's exhibit 4) acknowledging receipt of the return of the indorsement increasing the insurance on the plaintiff's policy, and saying that they believed that the new insurance in the Columbia Fire Insurance Company made entirely too much insurance, and they would prefer to be relieved of liability, and asked to have the original policy returned for cancelation.

On March 8 they made a second request (defendant's exhibit 9) to have the policy returned. On March 19 they made a third request (exhibit No. 10) to have the original policy returned for cancelation.

On March 21, 1940, George L. Vogler wrote them (defendant's exhibit No. 11) and said that he had been delaying until he had received an appraisement upon the dwelling, that the lowest appraisement was $6,800 and the highest $7,500, stating that it was a fine home, modern in every respect, and the Carr-Neff Lumber Company, which furnished most of the material, placed a value in excess of $7,000. The letter further states that the plaintiff is a man of means, owns his farms clear, and he would very much dislike to have to cancel the policy, and inclosed an indorsement for their signature to approve the additional insurance. On March 28, 1940, The Cavanaugh Company wrote Mr. Vogler (exhibit No. 12) saying that the farm department of defendant company "have their teeth set," and the only thing they want is to have the policy taken up for cancelation. On April 16, 1940, Mr. Vogler wrote exhibit No. 14, in which he says he cannot understand why they want the insurance canceled; that the property is not overinsured; that he had been given the first opportunity to write this additional insurance, and he closes the letter with this statement: "If the Company still insists on canceling out, you may have Mr. Mammen take up your supplies the next time he is thru here. If the policy is demanded for cancelation advise by return mail and it will be sent you promptly. Frankly I do not by any means like this."

On April 18, 1940, The Cavanaugh Company wrote letter, exhibit No. 15, being the same day on which fire destroyed

the property. They said they were very sorry, that the farm department insisted on cancelation of the policy, and they were asking special agent Mammen to call upon Vogler at his early convenience and take up the supplies; that they regretted this action, but had no other choice in the matter.

It thus clearly appears from the evidence that, up to the date of the fire on April 18, 1940, the plaintiff had never been notified by any one that there was any objection whatever to the additional insurance he had secured.

In examining the law in reference to this case, there appear to be several Nebraska cases very closely in point. One case is referred to in both briefs. It is *Hughes v. Ins. Co. of North America*, 40 Neb. 626, 59 N. W. 112. The provision in the policy read: "That the having of other insurance thereon (the insured property), or any part thereof, valid or invalid, prior or subsequent, not made known to this company, and consented to hereon, will render this policy void." It was held: "(1) That the violation of this provision by the assured in procuring additional insurance on the property without the knowledge or consent of the first insurer did not render the policy issued by it void, but voidable at the election of said first insurer; (2) that the provision was a reasonable one, not unconscionable, illegal, nor contrary to public policy; (3) that it was inserted in the insurance contract for the benefit of, and might be waived by, the insurer."

In this case a verdict was directed for the defendant and was affirmed by this court. Therefore, an examination of the facts will be necessary. It appears that there was secured another policy in another company upon the same property, also in the amount of $800, and the defendant company never knew anything about it; moreover, the insured never knew about it either, for it was taken out by a creditor of his in the name of the insured, who settled the second policy for $400 after the fire. It was held that, when additional insurance is so procured, then the first policy is voidable at the election of the insured.

In Nebraska we have a law covering the point in question, and it is section 44-322, Comp. St. 1929, which provides:

"The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding."

Judge Landis, in writing the opinion for the court in *Newman v. National Union Fire Ins. Co.,* 122 Neb. 94, 239 N. W. 464, stated that breach of conditions of fire policy respecting procurement of other insurance without insurer's consent, in the absence of evidence that the breach in any manner contributed to the loss, did not preclude recovery under this section of our statute.

In discussing this section of our statute (Comp. St. 1929, sec. 44-322), Judge Rose used this language: "These provisions are parts of the insurance contract which is not a device to procure and retain a premium and escape liability in the event of an honest loss." *Ware v. Home Mutual Ins. Ass'n,* 135 Neb. 329, 281 N. W. 617. See, also, *McCleneghan v. London Guarantee & Accident Co.,* 132 Neb. 131, 271 N. W. 276; *Carpenter v. Sun Indemnity Co.,* 138 Neb. 552, 293 N. W. 400.

It has been held that the violation of a condition in a fire insurance policy by mortgaging of insured chattels does not invalidate the insurance unless the breach of contract contributes to the loss. *Calnon v. Fidelity-Phenix Fire Ins. Co.,* 114 Neb. 194, 206 N. W. 765; *Roth v. Employers Fire Ins. Co.,* 123 Neb. 300, 242 N. W. 612.

We have examined the errors in regard to the giving and refusal to give instructions, but find nothing prejudicially erroneous. The vital point in this case may be set out that, when an insurance policy contains this provision, as in the case at bar, "Any other or additional insurance on the property covered by this Policy, whether valid or not, is prohibited, unless written consent by this Company is indorsed hereon, and this Company shall not be liable for any loss occurring while there is any other insurance, whether valid or not, covering the property insured, or any part thereof, not

consented to by this Company by indorsement on this Policy," it may be admitted that many decisions can be cited in which recovery has been denied.

But, ordinarily, the taking out of additional insurance does not render the first policy absolutely void, but voidable only at the option of the insurer, since that provision is placed in the policy for the benefit of the insurer and is one which it may waive. See *Slobodisky v. Phenix Ins. Co.*, 52 Neb. 395, 72 N. W. 483.

But where the insurance company, with full knowledge of the facts, continues to treat the policy as of binding force, the forfeiture will be considered as waived until knowledge of its demand is known to the insured.

It has been said that knowledge on the part of the agent of an insurance company authorized to issue its policies of facts which render the contract voidable at the insurer's option is knowledge of the company. See *Eagle Fire Co. v. Globe Loan & Trust Co.*, 44 Neb. 380, 62 N. W. 895.

Commissioner Ragan, in the case of *Home Fire Ins. Co. v. Hammang*, 44 Neb. 566, 62 N. W. 883, quoted from the case of *Kitchen v. Hartford Fire Ins. Co.*, 23 N. W. 616 (57 Mich. 135), as follows: "An insurance company is bound by the acts or conduct of an agent who has power to solicit insurance, make examination and survey of the premises, take applications and forward them to the home or branch office, deliver policies, and collect premiums; and when a party insured notifies such agent of his intention to take additional insurance, and when he has obtained such insurance requests him to inform his company of that fact, the company cannot, after a loss, hold the policy issued by it void because its written consent to the taking of such additional insurance was not indorsed on the policy, as provided therein."

When an insurance company, upon being informed that there have been substantial additions added to a house, and the insured desires to take out additional insurance with the company to cover these improvements, and such company has a new examination made, and finally decides to grant additional insurance thereon, and sends its local agent a

rider to add to the policy to cover such additional insurance, and then discovers that, because of its excessive deliberation in deciding whether to write such additional insurance, the insured has grown tired of waiting, and has finally secured such additional insurance from another company, promptly giving notice thereof, it appears to this court that such insurance company cannot avoid payment of its policy after a loss has occurred, when no notice of any kind was ever given to the insured of the company's desire to avail itself of this provision and to cancel its outstanding policy upon the usual terms. The judgment of the district court is hereby affirmed, and an attorney's fee of $300 allowed for services in this court.

AFFIRMED.